FOURTH DIVISION
April 3, 2008

No. 1-07-0271

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 CR 1664 |
| | ) | |
| RAUL CARO, | ) | Honorable |
| | ) | Henry R. Simmons, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE O'BRIEN delivered the opinion of the court:

Defendant, Raul Caro, was charged with one count of unlawful use of a weapon. After a hearing, the circuit court granted defendant's motion to quash the search warrant and suppress evidence pursuant to Franks v. Delaware, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978). The State appeals. We affirm.

On December 22, 2004, Officer Federico Andaverde submitted a complaint and affidavit for a search warrant to the circuit court. In the complaint, Officer Andaverde stated that on December 22, 2004, he had a conversation with a John Doe who related to him that defendant sells cocaine to members of the Spanish Cobras street gang. John Doe also related that on December 21, 2004, he went to the basement apartment at 1401 N. Hamlin Avenue, where he was met at the door by defendant and allowed into the apartment. John Doe had a conversation with defendant concerning the purchase of some cocaine. After the conversation, defendant walked into a front bedroom and then returned shortly afterwards with a large clear plastic bag that contained over 200 smaller plastic bags, each containing a white powder substance.

Defendant reached into the bag and randomly removed three of the smaller bags of white powder substance and handed them to John Doe in exchange for $30. John Doe left the apartment, went to a different location, and snorted the contents of one of those bags. John Doe reported that he received "the same high" as he previously received from snorting cocaine.

The complaint further stated that Officer Andaverde ran defendant's name in the Secretary of State's database, revealing that defendant had three vehicles registered in his name at 1401 N. Hamlin Avenue. Officer Andaverde showed a photograph of defendant to John Doe, and Doe identified defendant as the person who had sold him the cocaine on December 21, 2004, from the basement apartment located at 1401 N. Hamlin Avenue. Officer Andaverde brought Doe to 1401 N. Hamlin Avenue and Doe stated, "that is where I bought my [c]ocaine from yesterday and have been buying cocaine from for at least the past two months." Officer Andaverde walked up to the building at 1401 N. Hamlin Avenue and observed defendant's name on the door. He also stated that he observed one of defendant's registered vehicles parked just south of 1401 N. Hamlin Avenue.

On December 22, 2004, Officers Andaverde and Angel Amador brought John Doe before Judge Biebel. Judge Biebel interviewed John Doe for approximately 10 minutes regarding the truthfulness of the facts contained within the search warrant and then swore John Doe to the facts contained within the search warrant. Judge Biebel issued the search warrant at approximately 5:20 p.m. on December 22, 2004.

The search allegedly recovered a shotgun with a barrel measuring less than 18 inches, and defendant was charged with unlawful use of a weapon with regard thereto. Defendant was not

No. 1-07-0271

indicted for any drug-related offenses.

On January 18, 2006, defendant filed a motion to suppress evidence pursuant to Franks. In support, defendant included his own affidavit and those of his two roommates. In defendant's affidavit, he stated that he had lived at 1401 N. Hamlin Avenue for approximately 14 years. He was employed by Curial Management as an apartment manager and had been so employed for several years; he also renovated buildings. His roommates were his brother, David Caro, and a friend, Pedro Santiago. Defendant stated that on December 20, 2004, he went to sleep at approximately 10 p.m. His roommates also were present in the apartment that night and no one else came into the apartment that evening. He woke up for work the next morning, December 21, 2004, at 6:30 a.m. and left the apartment at approximately 7 a.m. He went to a building at 3960 W. Grand Avenue, where he worked that day installing drywall. He went home at approximately 7:30 p.m. His roommates were home when he arrived, he ate dinner, watched television, and went to bed. Defendant stated that no one came to his apartment on the night of December 21, 2004. Defendant denied that he sold cocaine or any narcotics to anyone in his apartment or at any other location on December 21, 2004. He stated that he never sold or used narcotics.

Defendant's brother, David Caro, stated in his affidavit that he lived in the apartment at 1401 N. Hamlin Avenue for 12 years. He was a machine operator for Olympic Oil, and had been employed there for 17 years. He stated that on December 20, 2004, he went to bed in the early evening and that no one came into the apartment except for defendant and the other roommate. He woke up for work at 3:30 a.m. on December 21, 2004, and left the apartment at 4 a.m. He worked until 1:30 p.m. and arrived back to an empty apartment at approximately 2 p.m. His

roommate, Pedro Santiago, arrived home at approximately 4 p.m., and the two of them cooked dinner and watched television until approximately 7 or 7:30 p.m., when David went to bed. At approximately 8 p.m., he heard defendant enter the apartment, watch some television, and then go to bed. David stated that while he was in the apartment on December 21, 2004, he did not see defendant or anyone else sell cocaine to anyone. Other than defendant and Pedro, he did not see anyone else in the apartment on December 21, 2004. He further stated that prior to December 21, 2004, he had never seen defendant use or sell cocaine or other drugs to anyone in their apartment or at any other location.

Pedro Santiago stated in his affidavit that he had lived in the apartment at 1401 N. Hamlin Avenue for 14 years. He was a laborer for Lakewood Company, a fan manufacturer, and had been employed there for 17 years. Pedro stated that on the evening of December 20, 2004, he and his roommates were alone in the apartment. He went to bed that evening and woke at 6:15 a.m. the following day for work. He left for work at 6:45 a.m. and returned home at 4 p.m. David Caro was present when he arrived home. Pedro and David made dinner and watched television. Pedro stated that defendant came into the apartment as he was getting ready to go to bed. Pedro stated that no one, other than his two roommates, was present with him in the apartment on December 21, 2004. While he was in the apartment on December 21, 2004, Pedro did not see defendant or anyone else sell cocaine to anyone. He also stated that prior to December 21, 2004, he had never seen defendant use or sell cocaine or other drugs to anyone in their apartment or at any other location.

On May 4, 2006, the circuit court granted defendant's request for a Franks hearing. At the

hearing, the following evidence was adduced. On December 22, 2004, Officers Andaverde and Amador had a conversation with a John Doe informant, who was referred to them by other police officers. Neither Officer Andaverde nor Officer Amador had ever worked with the John Doe informant before. John Doe informed the officers that on the previous day, December 21, 2004, he purchased three bags of narcotics from defendant. John Doe told the officers that defendant had a large knotted bag containing 200 smaller packets of cocaine. John Doe provided the officers with defendant's name, address, and description.

To verify the information given by the John Doe, Officer Andaverde went to the address provided and saw that the name on the doorbell matched defendant's name. The parties stipulated that the officers did not conduct a controlled buy, surveillance or any further investigation as to narcotics sales at 1401 N. Hamlin Avenue.

On December 22, 2004, Officer Andaverde took John Doe to the address at 1401 N. Hamlin Avenue, where he identified it as the house where he had purchased narcotics. The officer also obtained a photograph of defendant from the Secretary of State's database and showed it to John Doe.

The complaint for search warrant included defendant's name, age, date of birth, height, weight, eye color, hair color, complexion, social security number and driver's license number. The officers stated that they learned the name, height, weight and physical description from John Doe, and that they obtained the social security number, driver's license number and date of birth from the Secretary of State's database.

Officer Andaverde stated that on December 22, 2004, he and Officer Amador brought

John Doe before Judge Biebel. Judge Biebel interviewed John Doe for approximately 10 minutes regarding the truthfulness of the facts contained within the search warrant, and swore him to the facts contained within the search warrant. Judge Biebel thereafter granted the warrant. The common law record reveals that on December 22, 2004, the officers executed the warrant at the basement apartment at 1401 N. Hamlin Avenue.. From the apartment, the police recovered a shotgun with a barrel measuring less than 18 inches.

Defendant's brother, David Caro, testified that he lives at 1401 N. Hamlin Avenue. He stated that on December 21, 2004, he woke up at 3:30 a.m. and left for work at 4 a.m. He testified that between the time he woke up and left for work, nobody came to the apartment. When he left for work, defendant was still in the apartment. When David arrived home at approximately 2 p.m., nobody else was there. Pedro arrived home at approximately 4 p.m. David and Pedro ate dinner and watched television. David went to sleep at 7 p.m. He heard defendant come home at approximately 7 or 7:30 p.m. and did not hear anyone else come into the apartment that evening. He did not see defendant selling drugs to anyone in the apartment on December 21, 2004, and he has never known defendant to sell drugs.

Pedro Santiago testified that he had been living at 1401 N. Hamlin Avenue for 14 years. On December 21, 2004, he woke up at 6 a.m. and left for work at 6:30 a.m. He arrived home at approximately 4:30 p.m. David Caro was in the apartment when he arrived home. He and David made something to eat. David went to bed at approximately 7:15 p.m. and Pedro went to bed at approximately 8 p.m. Pedro heard defendant arrive home at approximately 8 p.m. and did not hear anyone else enter the apartment that evening. He did not see defendant selling drugs to

anyone in the apartment on December 21, 2004, and he has never known defendant to sell drugs.

Defendant testified that he had been living in the basement apartment at 1401 N. Hamlin Avenue for 14 years. He testified that when he woke up on December 21, 2004, at 6:30 a.m., both of his roommates were gone. He left the apartment at approximately 6:45 a.m. and went to work at 3960 W. Grand Avenue, where he was doing remodeling work for an attorney named Basil Anagnos. He finished working at 7:45 p.m. and returned home at 8 p.m. When defendant arrived home, both his roommates already were in bed. Defendant stated that nobody else arrived at the apartment that night and that he has never sold drugs to anyone.

The parties stipulated that Basil Anagnos is an attorney licensed to practice law in Illinois, and he also develops property. Mr. Anagnos owned the property at 3960 W. Grand Avenue. During the week of December 20, 2004, defendant was doing drywall work there. Mr. Anagnos periodically stopped by the premises to check on the progress of the work. On December 21, 2004, he stopped at 3960 W. Grand Avenue in the morning hours and saw defendant and another worker there putting up drywall. Mr. Anagnos stayed for approximately 15 minutes and then left. Mr. Anagnos had known defendant for 12 years, hired him on many occasions, and never knew him to use, sell or possess any type of illegal drugs.

After the conclusion of all the evidence, the circuit court granted defendant's motion to quash the search warrant and suppress evidence. The State filed a motion to reconsider, which the circuit court denied. The State filed this timely appeal.

The State contends that the trial court erred in granting defendant a Franks hearing and quashing the search warrant and suppressing evidence. The fourth amendment to the United

No. 1-07-0271

States Constitution guarantees the right to be free from unreasonable search and seizure. The amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend IV. The Illinois Constitution similarly provides that "[n]o warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized." Ill. Const. 1970, art. 1, §6.

A "detached judicial officer" resolves the question of whether probable cause exists justifying the issuance of a warrant. People v. Tisler, 103 Ill. 2d 226, 236 (1984). The decision is based on the information contained in sworn statements or affidavits presented to the magistrate. Tisler, 103 Ill. 2d at 236. Whether probable cause exists depends on the totality of the circumstances known to the officers and court at the time the warrant is sought. Tisler, 103 Ill. 2d at 236.

Prior to Franks, attacks on warrant affidavits were precluded. People v. Lucente, 116 Ill. 2d 133, 146 (1987). In Franks, the United States Supreme Court recognized a limited right to attack the veracity of a warrant affidavit. The Court held that to overcome the presumption of validity that attaches to a warrant affidavit and obtain a Franks hearing, defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and that "the allegedly false statement is necessary to the finding of probable cause." Franks, 438 U.S. at 155-56, 57 L. Ed. 2d at 672, 98 S. Ct. at 2676. Defendant makes a "substantial preliminary showing" when he offers proof that is "somewhere between mere denials on the one hand and proof by a

-8-

preponderance on the other." Lucente, 116 Ill. 2d at 152. The determination of whether a defendant made the necessary showing to warrant a Franks hearing is within the discretion of the circuit court and will not be disturbed absent an abuse of discretion. People v. Gorosteata, 374 Ill. App. 3d 203, 212 (2007).

The instant case is similar to Lucente. In Lucente, a police officer executed a complaint for a search warrant. In his supporting affidavit, he stated that an unnamed informant had told him that at approximately 8:30 p.m. on the previous evening, the informant had gone to an apartment and been admitted inside by Lucente. Lucente, 116 Ill. 2d at 139. In the apartment, the informant purchased marijuana. Lucente, 116 Ill. 2d at 139. A search warrant was issued. No marijuana was found, but another controlled substance, valium, was found in a bedroom dresser. Lucente, 116 Ill. 2d at 140.

Lucente filed a motion pursuant to Franks seeking to quash the warrant and the arrest. The motion alleged that the officer's warrant affidavit was false. Lucente, 116 Ill. 2d at 140. In support, Lucente filed an affidavit alleging that he was not present at his apartment during the hours (8:30 p.m.) the informant stated he made the purchase. Lucente, 116 Ill. 2d at 140. Lucente stated that on the evening in question, he and his wife were with his sister from 6:30 p.m. to 10 p.m. Lucente, 116 Ill. 2d at 140. Lucente's wife and sister also submitted affidavits stating that they were at the sister's house from 6:30 p.m. to 10 p.m. Lucente, 116 Ill. 2d at 140-41.

The trial court granted a Franks hearing and eventually quashed the warrant and suppressed the evidence. Lucente, 116 Ill. 2d at 141-43. On appeal by the State, the supreme court affirmed, holding:

"Had [Lucente's] proffer consisted solely of his own affidavit asserting 'I didn't do it,' that would amount to an unsubstantiated denial, and that would be plainly insufficient.

[Lucente] has done more than that, however. His showing is essentially an alibi, and he has corroborated that alibi with two affidavits besides his own. Furthermore, all [Lucente's] affidavits are sufficiently detailed so as to subject the affiants to the penalties of perjury if they are untrue. [Citations.] In our view, the presence of such sworn corroboration elevates this showing above the level of 'mere denial.' " Lucente, 116 Ill. 2d at 153-54.

The supreme court concluded that "[o]n balance, the showing made was such that the trial judge could permissibly conclude that an evidentiary hearing was warranted." Lucente, 116 Ill. 2d at 154.

Similarly, in the present case, defendant filed an affidavit stating that he was at work on the day the informant stated he made the purchase and that when he came home he ate dinner and watched television and went to bed. He denied selling or using any illegal drugs on the day in question. Defendant's two roommates also filed affidavits in support, stating that when defendant arrived home from work no one other than he and his roommates were present. Both roommates denied seeing defendant selling illegal drugs at the apartment on the day in question.

As in Lucente, defendant's showing was essentially an alibi, and he corroborated that alibi with two affidavits besides his own. All three affidavits are sufficiently detailed so as to subject the affiants to the penalties of perjury if they are untrue. Taken together, the affidavits constitute a substantial preliminary showing that a false statement implicating defendant in the drug

transaction was knowingly, intentionally, or recklessly included by the officer in the warrant affidavit, and that the allegedly false statement was necessary to the finding of probable cause. Based on these affidavits, the trial court did not abuse its discretion in determining that a Franks hearing was warranted.

The State contends that defendant's alibi is unavailing and did not warrant a Franks hearing, because his roommates could not account for defendant's whereabouts from 6:45 a.m. until 2 p.m., or from 8 p.m. onward. The State's argument would have merit if the informant had stated that the drug transaction had occurred during those time periods. However, the informant here merely stated that he had purchased drugs from defendant on December 21, 2004, but he never provided a time of day when the transaction occurred. In response, defendant filed an affidavit stating that he was at work all day on December 21, then went home, ate, and went to bed; his roommates provided affidavits confirming that when they returned home from work in the afternoon, defendant was not there, and that defendant came home near bed time and that they saw no drug transactions. The trial court could conclude from all these affidavits that an evidentiary Franks hearing was warranted. We find no abuse of discretion in the granting of the hearing.

The State argues, though, that People v. Gorosteata, 374 Ill. App. 3d 203 (2007), compels a different result. In Gorosteata, a police officer filed a complaint for the issuance of a search warrant. In his complaint, the officer averred that an informant had told him about a narcotic transaction he engaged in with a man named Gordo on the evening of June 24, 2003, at 4849 S. Honore Street. Gorosteata, 374 Ill. App. 3d at 205-06. The trial court approved the search

No. 1-07-0271

warrant, and a team of police executed the warrant. The officers recovered marijuana, cocaine, and bottles of Inositol, an agent used to dilute cocaine. Gorosteata, 374 Ill. App. 3d at 206. Gorosteata was charged with possession of cannabis with intent to deliver and possession of a controlled substance with intent to deliver. Gorosteata, 374 Ill. App. 3d at 206. Gorosteata filed a motion for a Franks hearing to quash the search warrant and suppress evidence. Gorosteata attached a number of affidavits stating that he had not engaged in any drug transactions on the date in question. Gorosteata, 374 Ill. App. 3d at 206-07.

The trial court denied the motion for a Franks hearing. Gorosteata, 374 Ill. App. 3d at 208. On appeal, the appellate court held in pertinent part:

"[T]here appears to be no dispute that [the informant] personally testified before the magistrate at the time Officer Sanchez applied for the search warrant. We agree with the circuit court that the police's employment of this procedure, rather than the officer merely presenting and vouching for his informant's claims in the officer's complaint, without presenting the informant to the court for interrogation, removed this case from the ambit of Franks.

A number of courts have recognized, as did the circuit court, that, when a nongovernmental informant is personally brought before the magistrate to testify to the facts that will establish probable cause in a warrant, the burden of determining the reliability of the informant then shifts to the court and away from law enforcement personnel. ***

* * *

-12-

*** [W]hen the informant appears before the magistrate, it is not even necessary for the police to corroborate the informant's account since 'the judge issuing the search warrant ha[s] an opportunity to *** determine the basis of [the informant's] knowledge.' [Citation.]

Thus, since [the informant] appeared before the magistrate to testify surrounding the allegations contained in the complaint for the search warrant of the second-floor apartment at 4849 S. Honore, this case falls outside the scope of Franks. Therefore, there was no error on the part of the circuit court in denying [Gorosteata] a Franks evidentiary hearing." Gorosteata, 374 Ill. App. 3d at 213-15.

In the present case, the State argues that John Doe was a nongovernmental informant who testified before the magistrate during the hearing on the State's complaint for a search warrant. Therefore, the State contends that, as in Gorosteata, this case falls outside the scope of Franks.

We disagree. Gorosteata is factually inapposite, as the appeal there was taken by defendant following the denial of a Franks hearing, whereas the appeal here is taken by the State from the granting of a Franks hearing. Unlike in Gorosteata, then, the issue in the present case is whether the trial court abused its discretion in granting the Franks hearing where the informant had earlier testified before the judge issuing the search warrant. We decline to hold that the informant's testimony categorically precluded a Franks hearing, especially where, as here, defendant's motion for a Franks hearing was supported with multiple affidavits indicating that defendant did not engage in any narcotics transactions on the date in question. The informant's testimony was but one factor to consider in determining whether to grant a Franks hearing; the

-13-

other factors to consider, as discussed above, were the affidavits filed by defendant and his roommates. We find no abuse of discretion in the trial court's decision to grant a Franks hearing.

We respectfully disagree with Gorosteata to the extent that its holding conflicts with our own. Gorosteata held that when a nongovernmental informant testifies before the judge issuing the warrant, the case falls outside the scope of Franks. Our review of Franks indicates otherwise. As discussed, Franks held that a defendant may attack the veracity of a warrant affidavit and obtain a hearing when he makes a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and that the alleged false statement was necessary to the finding of probable cause. Franks, 438 U.S. at 155-56, 57 L. Ed. 2d at 672, 98 S. Ct. at 2676. In providing for the Franks hearing, the Supreme Court noted that the fourth amendment requires a truthful showing of probable cause "in the sense that the information put forth is believed or appropriately accepted by the affiant as true." Franks, 438 U.S. at 165, 57 L. Ed. 2d at 678, 98 S. Ct. at 2681. The Supreme Court further noted:

"Because it is the magistrate who must determine independently whether there is probable cause [citations], it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, were to stand beyond impeachment.

* * *

[A] flat ban on impeachment of veracity could denude the probable-cause requirement of all real meaning. The requirement that a warrant not issue 'but upon

-14-

probable cause, supported by Oath or affirmation,' would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile." Franks, 438 U.S. at 165-68, 57 L. Ed. 2d at 678-80, 98 S. Ct. at 2681-82, quoting U.S. Const., amend IV.

Gorosteata defeats the purpose of Franks by allowing a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, to stand beyond impeachment as long as the nongovernmental informant testified before the judge issuing the search warrant. Contrary to Gorosteata's holding, Franks simply contains no language precluding an attack on the warrant affidavit when a nongovernmental informant testifies before the issuing judge. Accordingly, we decline to follow Gorosteata here.

Next, the State argues that the trial court erred in quashing the search warrant and suppressing the evidence. The relevant inquiry is whether defendant proved, by a preponderance of the evidence, that the affiant included false statements in the warrant affidavit with reckless disregard of the truth and that the statements were necessary to the finding of probable cause. Franks, 438 U.S. at 155-56, 57 L. Ed. 2d at 672, 98 S. Ct. at 2676. When reviewing a motion to suppress, the trial court's factual findings will be reversed only if they are against the manifest weight of the evidence; the trial court's ruling on the motion is a question of law that we review de novo. People v. McCarty, 223 Ill. 2d 109, 148 (2006).

The evidence at the hearing supports a finding that the warrant affidavit contained false statements that the affiant included with reckless disregard for the truth. Specifically, the officer's

affidavit contained the informant's statements to the officers that he had purchased drugs from defendant on December 21, 2004. The trial court found that the informant's statement regarding "[t]he entire content of what drugs were in the home" was false. The trial court's factual finding was supported by the affidavits of defendant and his roommates (denying any drug transactions) and was not against the manifest weight of the evidence. Further, the testimony at the hearing supported the trial court's finding that the officers did not properly investigate the truthfulness of the informant's allegations. They did not check the informant's background or check his name with any other police unit or conduct any surveillance of defendant's building or conduct a controlled buy. The officers' conduct demonstrated that they acted with reckless disregard for the truth or falsity of the statements provided by the informant; and the statements were necessary to the finding of probable cause. Accordingly, we affirm the trial court's order quashing the search warrant and suppressing the evidence.

Affirmed.

NEVILLE, P.J., and CAMPBELL, J., concur.