# Illinois Official Reports

## Appellate Court

---

### *People v. Chambers*, 2014 IL App (1st) 120147

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRILL CHAMBERS, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-12-0147 |
| Filed | May 27, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's convictions for armed violence and unlawful possession of a controlled substance with intent to deliver, the appellate court held that the trial court should have granted defendant's request for a *Franks* hearing, where defendant's affidavit and the affidavits of four others related to the warrant to search defendant's residence were sufficient to establish that the officer knew the allegations in the complaint for the warrant were false; therefore, the cause was remanded to allow the trial court to conduct a hearing to determine the credibility of the witnesses and resolve the various inconsistencies, and if the trial court finds the warrant was properly issued, the appellate court retained jurisdiction to consider defendant's claim that his sentence was excessive, but if the warrant should be quashed, double jeopardy does not bar retrial. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-10704; the Hon. Luciano Panici, Judge, presiding. |
| Judgment | Reversed and remanded with instructions; jurisdiction retained. |

Counsel on Appeal

Michael J. Pelletier, Alan D. Goldberg, and Tomas G. Gonzalez, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and William L. Toffenetti, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE DELORT delivered the judgment of the court, with opinion. Justices Hoffman and Cunningham concurred in the judgment and opinion.

**OPINION**

¶ 1    After a jury trial, Terrill Chambers was found guilty of armed violence and possession of a controlled substance with intent to deliver and sentenced to consecutive respective terms of 25 and 45 years' imprisonment. In this appeal, he contends that the court erred in denying his motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), and that the sentences imposed by the circuit court are excessive.

¶ 2    On April 19, 2007, a warrant issued to search defendant, the premises located at 15227 Parkside in Markham, Illinois, and any safe or lockbox found therein and to seize cannabis, items used in the manufacture, distribution and possession of cannabis, proof of residency, United States currency, and firearms and ammunition. The warrant was issued on a complaint signed and sworn to before the issuing judge by Markham police officer Tony DeBois and "John Doe," a confidential informant.

¶ 3    In the complaint, Officer DeBois averred the following facts. He stated he had been a police officer for 11 years and was assigned to the tactical gang and narcotics unit. About 4:30 p.m. on April 18, 2007, he pulled over a vehicle near 15110 Cherry Street, in which the confidential informant, whom the officer had known for one year and who had previously assisted him in other narcotics cases, was riding. The officer detained him and his two companions who were also in the vehicle. The informant told the officer that about 4 p.m., he had purchased cannabis from defendant inside defendant's home at 15227 Parkside in Markham, and that defendant had also shown him a black handgun that he kept under a couch cushion. The officer transported the informant and his two companions to the police station, where the substance the informant had ostensibly purchased from defendant field-tested positive for cannabis, and the informant identified and signed a mugshot photograph of defendant. Officer DeBois further averred that he had previously received numerous calls about cannabis being sold from 15227 Parkside by defendant.

¶ 4    A team of officers from the Illinois State Police, the Markham police department and the Cook County sheriff's police executed the search warrant at 15227 Parkside in Markham on

April 19, 2007. Defendant was the only person inside the residence at the time. In the ensuing search, officers recovered two bags of cocaine weighing 1005.6 and 712.8 grams, about $52,000 in cash, and jewelry for which the corresponding sales receipts totaled nearly $69,000. Police also found an AK-47 assault rifle, a Taurus .40-caliber handgun, a Glock .40-caliber pistol with an extended 29-round magazine, a .22-caliber rifle, a .410-gauge shotgun, a 12-gauge semiautomatic shotgun, a .45-caliber semiautomatic rifle, and a small bluesteel revolver. These materials provided the basis for the multiple-count indictment against defendant. Before trial, defendant filed a "Motion for a '*Franks*' hearing in order to quash the search warrant and suppress evidence illegally seized," and later, a "motion for judicial notice," arguing that Officer DeBois and the informant committed perjury in the complaint for a search warrant. Defendant alleged, *inter alia*, that the address listed in the complaint for where Officer DeBois detained the informant, 15110 Cherry Street, did not exist in Markham. Defendant also contended that at the time the informant claimed to have been at 15227 Parkside purchasing cannabis from him, he had been at a different location.

¶ 5    In support of his motion, defendant submitted his own affidavit, in which he averred that he lived at 3031 Sherwood Avenue in Markham, and not at 15227 Parkside, where the search was conducted. He maintained that the Parkside address was owned by his mother and that he sometimes stayed there to oversee rehab work at the property. He also claimed that on April 18, 2007, he was at his home on Sherwood doing plumbing work with his stepfather, and he did not visit the residence on Parkside or sell any controlled substances to anyone at that address.

¶ 6    Defendant also submitted affidavits from his stepfather, mother, girlfriend and mother of his two children, and a family friend named Bennetta Eaton stating that they were at the Sherwood address on April 18, 2007, and that defendant was there working on plumbing with his stepfather.

¶ 7    On March 31, 2009, the trial court agreed to hold a hearing on defendant's *Franks* motion, but the case was assigned to a different judge at some point thereafter. On July 29, 2010, the State requested the court to reconsider the grant of a hearing on defendant's motion. The State argued that *Franks* was inapplicable because the informant had been brought before the issuing judge and that judge had the opportunity to assess the informant's credibility, demeanor and reliability. The State noted that the affidavit of Eaton, in which she claimed to have seen defendant at the Sherwood residence between 11 a.m. and 2:30 p.m., was irrelevant because it did not cover the time of the cannabis purchase by the informant at 4 p.m. The State also noted that a police report written just after defendant's arrest listed the address as 15410 Cherry Lane, an actual address, and argued that the address listed in the complaint, 15110 Cherry Street, was merely a typographical error. The court granted the State's motion for reconsideration and denied defendant's motion for a *Franks* hearing.

¶ 8    On December 29, 2010, defendant filed a "Second Motion for a *Franks* Hearing" in which he reiterated his original claims and added, *inter alia*, that the original search warrant and the mugshot of him identified by the confidential informant had not been located and that counsel had discovered that Officer DeBois had previously been sued civilly for alleged fourth amendment violations. Defendant further argued that a *Franks* hearing was also necessary pursuant to another previously filed sworn statement by the alleged confidential informant.

¶ 9        In that filing, defendant alleged that the State had named Aaron Lindsey as the confidential informant and attached a transcript from a deposition of Lindsey in which he testified that he had not been that informant. Lindsey stated that on April 17, 2007, he bought marijuana from a person at school and brought the marijuana with him the next day when he met with his friends Miles Copeland and Jeron Cotton. As he, Copeland, and Cotton were driving, they were pulled over by two police officers and brought to the Markham police station. Lindsey was familiar with Officer DeBois and stated that Officer DeBois was not one of the two officers who stopped them, and Lindsey was not questioned by Officer DeBois at the police station. Lindsey denied obtaining the marijuana in his possession from defendant or telling police that he did. He also claimed he did not sign the complaint for a search warrant or testify before the issuing judge. Lindsey testified that he subsequently learned that he "might have been named" as the confidential informant when he had a conversation with defendant, his cousin, who questioned him about whether he was arrested on Cherry Lane, and Lindsey and defendant noticed the similarities between Lindsey's experience and the alleged experiences of the informant.

¶ 10       In response, the State asserted that it had never represented to defendant or the court that Lindsey was the confidential informant. The State further contended that defendant's attempts to ascertain the identity of the John Doe informant violated a previous court order denying his request to produce the informant.

¶ 11       Defendant then filed a third motion for a *Franks* hearing on July 19, 2011, in which he now alleged that Miles Copeland was actually the confidential informant. He attached an affidavit from Copeland stating that he had signed a false affidavit and lied to the issuing judge because Officer DeBois had threatened him with five years in prison. In his affidavit Copeland also alleged the following. In April of 2007, he and Lindsey participated in an armed robbery in which they acquired $10 in cash and $90 of marijuana. They later picked up Cotton and were driving when they saw Officer DeBois and another officer look at them from an unmarked police vehicle. The three men exited the car and began to walk away, but came back after the officers told them to do so. The officers searched the car and found one or two fully loaded .32-caliber magazines, a firearm, and marijuana. The men were taken to the police station, where Officer DeBois intimidated and coerced Copeland into testifying before the issuing judge and signing the complaint for a search warrant.

¶ 12       The court subsequently denied defendant's motions, observing that the informant "appeared before a Judge, gave him an affidavit, talked to the Judge, and the Judge signed the search warrant." The court also found Copeland's affidavit "suspect," noting that he averred that he had participated in an armed robbery, which he claimed was the source of the marijuana found in the vehicle. After a jury trial, defendant was found guilty of possession of a controlled substance with intent to deliver, and armed violence.

¶ 13       In this appeal, defendant first contends that the trial court erred in denying his motions for a *Franks* hearing. Although defendant claims that we should review this claim *de novo*, citing cases from federal courts of appeal, our supreme court has held that there is a presumption of validity with respect to an affidavit supporting a search warrant, and, "[s]o long as the trial court's judgment is exercised within permissible limits, that judgment will not be disturbed." *People v. Lucente*, 116 Ill. 2d 133, 153 (1987). Thus, when a defendant challenges the trial court's denial of a *Franks* hearing, the standard of review is whether or not the trial court

abused its discretion in finding that defendant was not entitled to a hearing. *People v. Gorosteata*, 374 Ill. App. 3d 203, 212 (2007).

¶ 14 In order to warrant a *Franks* hearing, a defendant is required to make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and that the allegedly false statement was necessary to the finding of probable cause. *Franks*, 438 U.S. at 155-56; *People v. Creal*, 391 Ill. App. 3d 937, 943 (2009). As our supreme court noted in *Lucente*, *Franks* expressly states that in order to prevail *at a hearing* a defendant must prove his claim of perjury by a preponderance of the evidence, and if the preponderance standard applies at the hearing, it follows logically that the threshold requirement must be something less. *Lucente*, 116 Ill. 2d at 151-52 (citing *Franks*, 438 U.S. at 156). The supreme court thus determined that the precise standard lies somewhere between mere denials on the one hand and proof by a preponderance on the other. *Lucente*, 116 Ill. 2d at 152.

¶ 15 As an initial matter, the State contends that this case falls outside the scope of *Franks*, because where, as here, an informant appears before an issuing judge to testify, "the informant is under oath *** [and] the judge has the opportunity to personally observe the demeanor of the informant and to assess the informant's credibility." (Internal quotation marks omitted.) *Gorosteata*, 374 Ill. App. 3d at 214. Defendant disagrees, pointing out that in *People v. Caro*, 381 Ill. App. 3d 1056, 1065 (2008), another division of this court found that an informant's testimony in front of an issuing judge is but one factor to consider in determining whether to grant a *Franks* hearing, but it does not categorically preclude the court from holding a *Franks* hearing. We agree with defendant.

¶ 16 To the extent that *Gorosteata* stands for the proposition that a *Franks* hearing is never warranted if an informant appears before the magistrate, we reject such a holding. Since *Gorosteata* was decided, our courts have declined to follow this bright-line rule and have warned that adopting such a rule "defeats the purpose of *Franks* by allowing a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, to stand beyond impeachment as long as the nongovernmental informant testified before the judge issuing the search warrant." *Caro*, 381 Ill. App. 3d at 1066. As noted by this court in *Caro*, 381 Ill. App. 3d at 1066, "*Franks* simply contains no language precluding an attack on the warrant affidavit when a nongovernmental informant testifies before the issuing judge."

¶ 17 We agree with the reasoning of *Caro* and accordingly decline to follow the bright-line rule set forth in *Gorosteata*. An informant's appearance before a judge at the time of the issuance of the warrant does not necessarily preclude the possibility that the affiant-police officer knows that the informant's allegations are false when he is seeking a search warrant, and, if the defendant has evidence that the affiant-officer acted intentionally or with reckless disregard for the truth by presenting a warrant affidavit with false allegations, he should be given the opportunity to present that evidence before the trial court. As such, even though the confidential informant in this case personally appeared before the issuing judge, defendant must still be given the opportunity to make the requisite "substantial preliminary showing" as required by *Franks*.

¶ 18 Defendant asserts that he made that showing by his own affidavit and the other affidavits attached to his motion averring that he was elsewhere when the confidential informant purported to buy marijuana from him, and by the affidavit of Copeland in which he stated

- 5 -

that he was that informant and was coerced by Officer DeBois into testifying falsely against defendant.

¶ 19    In determining whether defendant made the required showing, we are guided by the supreme court's decision in *Lucente*. In that case, a police officer filed a complaint for a search warrant, and, in the supporting affidavit, he stated that a confidential informant told him that he had gone to the defendant's apartment at approximately 8:30 p.m. the night before and purchased marijuana from the defendant. The defendant filed a *Franks* motion alleging the officer's warrant affidavit was false, and included an affidavit stating that he and his wife were with his sister from 6:30 p.m. to 10 p.m. His wife and sister also filed affidavits averring that they were at the sister's house from 6:30 p.m. to 10 p.m. The trial court granted a *Franks* hearing and quashed the warrant and suppressed the evidence. *Lucente*, 116 Ill. 2d at 140-41. On appeal, our supreme court affirmed, noting that the defendant did not simply deny the allegations, but supported his showing with an alibi and corroborated the alibi with two affidavits in addition to his own. The court concluded, "[i]n our view, the presence of such sworn corroboration elevates this showing above the level of 'mere denial.' " *Lucente*, 116 Ill. 2d at 154.

¶ 20    Similarly, in *Caro*, 381 Ill. App. 3d at 1063, an informant told a police officer that he frequently bought cocaine from the defendant at the defendant's home and had done so on the previous night. *Caro*, 381 Ill. App. 3d at 1058. The officer brought the informant before an issuing judge and, after interviewing the informant, the judge issued a search warrant for the defendant's home. *Caro*, 381 Ill. App. 3d at 1058. During the ensuing search, the officer recovered one shotgun and defendant was subsequently charged with unlawful use of a weapon. *Caro*, 381 Ill. App. 3d at 1058. The defendant filed a *Franks* motion and included his own affidavit and those of his two roommates stating that they were at the apartment on the night in question and that no one else had come into the apartment. The trial court held a hearing and granted the defendant's motion to quash the search warrant and suppress the evidence. *Caro*, 381 Ill. App. 3d at 1061. This court affirmed, concluding that where the affidavits showed that the defendant had an alibi and were sufficiently detailed to subject the affiants to the penalties of perjury if they were untrue, the defendant made a substantial preliminary showing to obtain a *Franks* hearing.

¶ 21    Here, the affidavits submitted by defendant and the four other affiants regarding his whereabouts raise a question of defendant's presence at the relevant address at the time of the incident and are sufficiently detailed to subject the affiants to the penalties of perjury if their allegations are untrue. Moreover, unlike in *Lucente* or *Caro*, defendant in this case also submitted an affidavit from the purported confidential informant, Copeland, who explicitly averred that he made false allegations against defendant because he was threatened by Officer DeBois, and he had not, in fact, bought marijuana from defendant as he had previously alleged. Copeland's affidavit, if believed, was sufficient to show that Officer DeBois had knowledge that the allegations in the complaint for a search warrant were false. In these circumstances, we conclude that defendant met the standard, and he should have been afforded the opportunity to present his evidence at a *Franks* hearing.

¶ 22    Although the State argues that the court was within its discretion to deny defendant's motion for a *Franks* hearing due to a number of inconsistencies between Copeland's and Lindsey's affidavits, we find that these inconsistencies would be best resolved by an

evidentiary hearing on the matter, during which the court could determine the credibility of the witnesses and resolve inconsistencies in the evidence.

¶ 23    We therefore remand this matter to the trial court for the sole purpose of holding a *Franks* hearing. That hearing must be held within 90 days of the issuance of our mandate, and the clerk of the circuit court is instructed to transmit the transcripts of that hearing and any other new pleadings or orders to this court as a supplemental record. Because this hearing may render defendant's excessive sentencing claim moot, we decline to consider it at this time. However, we retain jurisdiction to determine that claim should the trial court find that the warrant was properly issued. If, however, the trial court concludes that the search warrant should be quashed, we note that, pursuant to *People v. Olivera*, 164 Ill. 2d 382, 393 (1995), double jeopardy does not bar retrial where all evidence submitted at the original trial, even that which was erroneously submitted, is sufficient to establish defendant's guilt.

¶ 24    Reversed and remanded with instructions; jurisdiction retained.