NOTICE

Decision filed 08/24/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 170229-U

NO. 5-17-0229

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Massac County. |
| | ) | |
| v. | ) | No. 15-CF-49 |
| | ) | |
| RICHARD JOINER, | ) | Honorable |
| | ) | Joseph J. Jackson, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE OVERSTREET delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The trial court rightly denied the defendant's motion for a *Franks* hearing.

¶ 2   On appeal from his conviction for unlawful possession of less than five grams of methamphetamine (720 ILCS 646/60(a), (b)(1) (West 2014)), the defendant, Richard Joiner, argues that the trial court erred in denying his pretrial motion for a *Franks* hearing (*Franks v. Delaware*, 438 U.S. 154 (1978)). For the reasons that follow, we affirm.

¶ 3                                              FACTS

¶ 4   On June 6 or 7, 2015, using a confidential informant later identified as P.R., Deputy Chad Kaylor of the Massac County Sheriff's Office conducted a controlled purchase of methamphetamine from the defendant at the defendant's home in Brookport.

1

On the afternoon of June 8, 2015, after Kaylor and P.R. appeared and attested to a complaint for a search warrant that Kaylor prepared following the controlled purchase, the trial court issued a warrant authorizing a search of the defendant's home. In the complaint for the warrant, which Kaylor and P.R. both signed, Kaylor stated that for more than six months, he had been receiving reports that the defendant had been selling methamphetamine and that P.R. had purchased methamphetamine from the defendant on several occasions during that time. Kaylor swore that the controlled buy at the defendant's home had taken place "under [Kaylor's] surveillance" and "[w]ithin the last 48 hours." Kaylor stated that he had searched P.R.'s person before P.R. entered the defendant's residence and that the search had been "negative" for money or drugs. Kaylor advised that he had then given P.R. United States currency to use for the controlled buy. Kaylor further advised that after exiting the defendant's home, P.R. possessed a quantity of methamphetamine that had been purchased from the defendant and that when searched again, P.R. did not have the money that Kaylor had previously provided. The complaint did not mention that after the initial search, P.R. had traveled to the defendant's home in a motorhome and that Kaylor had followed him in a separate vehicle. Hours after the search warrant was issued, the defendant was arrested at his residence after the warrant was executed, and 4.9 grams of methamphetamine were found in a safe in the bathroom.

¶ 5     On June 9, 2015, the defendant was interviewed while in custody and admitted that the methamphetamine found in the safe was his. On June 10, 2015, the State filed an information charging the defendant with one count of possessing the methamphetamine

(count II) and one count of possessing the methamphetamine with the intent to deliver it (count I).

¶ 6    In April 2016, the defendant filed a motion to suppress evidence arguing that the allegations set forth in the complaint for the search warrant of his home were insufficient to justify the issuance of the warrant. In June 2016, the trial court held a hearing on the defendant's motion to suppress, where Kaylor was the sole witness.

¶ 7    Kaylor testified that he had searched P.R.'s person prior to the controlled buy and had found no currency or contraband. Kaylor testified that he had also searched the "van cab" motorhome that P.R. had been driving and had not seen anything "out in the open." Kaylor acknowledged that he had not explored "every nook and cranny" of the motorhome and had not had a "drug dog sniff around" the vehicle.

¶ 8    Kaylor explained that after providing P.R. with the cash to make the controlled purchase, he followed P.R. to the defendant's residence and watched as P.R. entered and exited the home. P.R. then returned to his vehicle, and Kaylor followed him to a rendezvous point, where Kaylor searched him again. Kaylor testified that the second search revealed that P.R. was in possession of 1.25 grams of methamphetamine and did not have the money that Kaylor had given him prior to his entry into the defendant's home.

¶ 9    Kaylor acknowledged that he had not previously used P.R. as a confidential informant and had first met him a few hours before the controlled buy. Kaylor testified P.R. had done informant work in Pope County on previous occasions, however, and that the sheriff of Pope County had personally recommended him. Kaylor acknowledged that

he had been aware that P.R. had a prior criminal history but had not included that information in the complaint for the search warrant. Kaylor further acknowledged that he could not state with 100% certainty that the methamphetamine found on P.R.'s person did not originate from P.R.'s motorhome. Kaylor did not specify when the controlled purchase had occurred, but he indicated that it had occurred prior to the date that the search warrant had been obtained.

¶ 10    The trial court subsequently denied the defendant's motion to suppress evidence, noting that when Kaylor and P.R. appeared before the court and swore to the complaint for the search warrant, P.R. had been "placed under oath." In September 2016, the defendant filed a motion to suppress statements, which was also denied following a hearing.

¶ 11    On February 17, 2017, the defendant filed a motion for a *Franks* hearing. The motion alleged, *inter alia*, that P.R.'s claim that he had purchased methamphetamine from the defendant in June 2015 was a false statement that had been knowingly and intentionally made. Attached as exhibits to the motion were four affidavits: one from P.R. stating that he had purchased tools from the defendant on June 8, 2015; two from individuals stating that on June 11, 2015, P.R. had told them that he had purchased tools from the defendant; and one from an individual stating that she had been told that P.R. had falsely claimed that he had purchased drugs from the defendant and that someone had planted something in the defendant's residence to get him arrested.

¶ 12    On February 27, 2017, the State filed a response to the defendant's motion for a *Franks* hearing. The State maintained that the defendant's motion failed to make a

substantial showing that the information presented in the complaint for the search warrant was false or that Kaylor, as the affiant officer, had recklessly or knowingly engaged in the presentation of any false information.

¶ 13 On March 2, 2017, the cause proceeded to a hearing on the defendant's motion for a *Franks* hearing, and the defendant tendered a supplement to the motion. The defendant's supplement noted that Kaylor's warrant complaint had failed to disclose that P.R. had a criminal history and had traveled to the defendant's residence in a motorhome that had not been thoroughly searched or subjected to a "drug dog sniff." The supplement also included a second affidavit from P.R. in which he specifically stated that he had not purchased any controlled substances from the defendant on June 8, 2015, but that he had purchased tools from the defendant on that date. P.R.'s second affidavit further suggested that he had never purchased controlled substances from the defendant and that the defendant's arrest had been orchestrated by the defendant's girlfriend.

¶ 14 At the hearing on the motion, the defendant argued that he was entitled to a *Franks* hearing in light of the affidavits he presented and the transcript of the hearing on his motion to suppress evidence. In response, the State again emphasized that the defendant had failed to make a substantial showing that Kaylor had recklessly or knowingly engaged in the presentation of any false information. The State suggested that any alleged malfeasance that could be attributed to P.R. was therefore irrelevant under the circumstances.

¶ 15 When denying the defendant's motion for a *Franks* hearing, the trial court again noted that when P.R. appeared before the court on the complaint for the search warrant,

he had been placed under oath. The court further recalled that it had asked P.R. specific questions as to the basis of his knowledge before issuing the warrant authorizing the search of the defendant's home. The court noted that Kaylor had "[o]bviously" relied on what P.R. had reported as well. The trial court concluded that P.R. could "recant his testimony" if he chose to do so but that there was no need for a *Franks* hearing.

¶ 16    On March 7, 2017, the cause proceeded to a jury trial, where the defendant was found guilty on count II and not guilty on count I. On March 20, 2017, the defendant filed a posttrial motion alleging, *inter alia*, that the trial court erred in denying his motion for a *Franks* hearing.

¶ 17    On May 30, 2017, the trial court denied the defendant's posttrial motion and ordered him to serve a four-year sentence on his conviction on count II. When addressing the defendant's claim that the trial court erred in denying his motion for a *Franks* hearing, the court again emphasized that before issuing the warrant authorizing the search of the defendant's home, the court had "placed [P.R.] under oath and asked additional questions." The court then explained that Kaylor and the court had "both believed [P.R.], and the search warrant was issued on that basis." On June 12, 2017, the defendant filed a timely notice of appeal.

¶ 18                                    DISCUSSION

¶ 19    The defendant argues that the trial court erred in denying his request for a *Franks* hearing given that in P.R.'s second affidavit, P.R. indicated that he had not purchased methamphetamine from the defendant during the controlled buy as he had claimed. As an alternative ground, the defendant maintains that he is entitled to a *Franks* hearing because

6

Kaylor omitted crucial information from the complaint for a search warrant. We disagree and conclude that the trial court correctly determined that no crucial information was omitted and that P.R.'s apparent recantation of the controlled purchase was irrelevant under the circumstances.

¶ 20   In pertinent part, the fourth amendment to the United States Constitution, made applicable to state officials through the fourteenth amendment, provides that " 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation.' " *People v. Manzo*, 2018 IL 122761, ¶ 26 (quoting U.S. Const., amend. IV). In *Franks*, the United States Supreme Court held that the fourth and fourteenth amendments are violated where a search warrant is obtained upon an affidavit containing false information that is deliberately or recklessly provided. *Franks*, 438 U.S. at 154, 164-65, 171-72. The Court explained that because a trial judge must independently determine whether there is probable cause supporting the issuance of a search warrant, "it would be an unthinkable imposition upon his [or her] authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment." *Id*. at 165. The Court further held that where a violation occurs "and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id*. at 156.

¶ 21   The purpose of allowing *Franks* hearings is to deter misconduct on the part of the police. *People v. Chambers*, 2016 IL 117911, ¶ 45. In *Franks*, the defendant's allegations were that the officers who obtained a warrant to search his apartment had done so in bad

7

faith with an affidavit based on fabricated and misrepresented information. *Franks*, 438 U.S. at 157-58, 164. Notably, the *Franks* Court emphasized that "[t]he deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." *Id*. at 171. The Court further explained that it was only addressing "the question of the integrity of the affiant's representations as to his own activities." *Id*. at 170.

¶ 22   As our supreme court has since noted, pursuant to *Franks*, if a defendant " 'makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause,' " then a hearing on the matter must be held at the defendant's request. *Chambers*, 2016 IL 117911, ¶ 35 (quoting *Franks*, 438 U.S. at 155-56). Whether a defendant has made a preliminary showing warranting a *Franks* hearing is reviewed *de novo*. *Id.* ¶ 79.

¶ 23   The defendant first maintains that he was entitled to a *Franks* hearing in light of P.R.'s apparent recantation of the controlled purchase described in Kaylor's warrant application. Suggesting that P.R.'s express representations that the defendant had sold him methamphetamine during the controlled buy were essential to the trial court's finding of probable cause, the defendant emphasizes that Kaylor had no independent knowledge that there was methamphetamine inside the defendant's home. Kaylor was not required to obtain independent knowledge, however; he was only required to obtain probable cause. See *People v. Exline*, 98 Ill. 2d 150, 154 (1983). Probable cause exists where the facts and surrounding circumstances are sufficient to justify a reasonable belief that the

8

defendant is or has been involved in criminal activity. *People v. Garvin*, 219 Ill. 2d 104, 115 (2006). Proof beyond a reasonable doubt is not required, and, "[i]ndeed, probable cause does not even demand a showing that the belief that the suspect has committed a crime be more likely true than false." *People v. Wear*, 229 Ill. 2d 545, 564 (2008).

¶ 24    Here, because Kaylor personally supervised the controlled purchase in question, his sworn account of the transaction independently established probable cause justifying the trial court's issuance of the search warrant. See *People v. Blake*, 266 Ill. App. 3d 232, 242 (1994) (holding that where the affiant officer conducted controlled purchases of cocaine at the defendant's residence, the officer's "personal observations were sufficient to show that, more probably than not, cocaine would be found on the premises" independent of the information provided by the informant); *cf. People v. Hoye*, 311 Ill. App. 3d 843, 846-47 (2000) (holding that the defendant could challenge the veracity of the informant's affidavit at a *Franks* hearing in the absence of an officer's affidavit sufficiently supporting the warrant application). Thus, even setting aside P.R.'s allegedly false information, the remainder of Kaylor's warrant application was facially sufficient. Moreover, absent a preliminary showing of intentional, knowing, or reckless misconduct on the part of the affiant officer resulting in the presentation of false information, the recantations of an informant such as P.R. are irrelevant. See *People v. Garcia*, 2017 IL App (1st) 133398, ¶¶ 27, 32 (affirming the denial of the defendant's request for a *Franks* hearing where nothing indicated that the informant, who signed the affiant officer's complaint and swore to its truth before the judge, had ever advised the officer that she had lied about purchasing drugs from the defendant the day before the search warrant was

issued); *People v. Creal*, 391 Ill. App. 3d 937, 944-45 (2009) (holding that the defendant was not entitled to a *Franks* hearing where his motion and accompanying affidavits did not indicate that the affiant officer had any reason to believe that the informant, who appeared before the judge and signed an affidavit swearing to the truth of the officer's complaint, was being untruthful); see also *United States v. Dorfman*, 542 F. Supp. 345, 366 (N.D. Ill. 1982) ("The fact that a third party lied to the affiant, who in turn included the lies in a warrant affidavit, does not constitute a *Franks* violation. A *Franks* violation occurs only if the affiant knew the third party was lying, or if the affiant proceeded in reckless disregard of the truth."); *cf. Chambers*, 2016 IL 117911, ¶¶ 9, 92-93 (holding that the defendant was entitled to a *Franks* hearing on his claim that the police had coerced the informant into providing false statements used to obtain a warrant); *People v. Caro*, 381 Ill. App. 3d 1056, 1067 (2008) (affirming the suppression of the fruits of the search warrant where the evidence at the *Franks* hearing established that the affiant officer acted with reckless disregard for the truth or falsity of the statements provided by the informant).

¶ 25    Here, as previously noted, in P.R.'s second affidavit, in addition to indicating that he had never purchased any controlled substances from the defendant, he specifically claimed that he had not purchased any controlled substances from the defendant on June 8, 2015. Assuming that P.R. intended to specifically state that he had not purchased any controlled substances from the defendant on the date of the controlled buy, *i.e.*, June 6 or 7, 2015, and further assuming the truth of that statement, nothing suggests, and the defendant has never alleged, that Kaylor, as the affiant officer, engaged in any

10

intentional, knowing, or reckless misconduct that resulted in the presentation of the false information. As the trial court indicated below, given that P.R. had been questioned by the court under oath before the search warrant was issued, both Kaylor and the court had every reason to believe that the controlled purchase Kaylor conducted was, in fact, valid. *Cf. People v. Lucente*, 116 Ill. 2d 133, 148 (1987) (holding that the defendant was entitled to a *Franks* hearing on his claim that the affiant officer fabricated the alleged informant's drug purchase described in the warrant application). Furthermore, "[w]hether probable cause exists in a particular case depends on the totality of facts and circumstances known to an affiant applying for a warrant at the time the warrant is sought" (*People v. McCarty*, 223 Ill. 2d 109, 153 (2006)), and that P.R. later indicated that he had not purchased any methamphetamine during the controlled purchase at the defendant's residence did not negate his previous representations that he had. We lastly note that the recantation of testimony is regarded as "inherently unreliable" (*People v. Morgan*, 212 Ill. 2d 148, 155 (2004)) and that considered collectively, the affidavits the defendant provided in support of his motion for a *Franks* hearing suggest collusion between P.R., the defendant, and several of their acquaintances (see *Garcia*, 2017 IL App (1st) 133398, ¶ 34). In any event, because Kaylor's sworn account of the controlled purchase independently established probable cause and because nothing suggests that he had any reason to doubt P.R.'s representations that the purchase was valid, the trial court correctly concluded that P.R.'s apparent recantation did not necessitate a *Franks* hearing.

¶ 26    Next, correctly observing that the reasoning of *Franks* extends to situations where information necessary for a determination of probable cause is intentionally or recklessly

11

omitted from a warrant affidavit (*People v. Hickey*, 178 Ill. 2d 256, 282 (1997)), the defendant alternatively argues that he was entitled to a *Franks* hearing because Kaylor's warrant application failed to advise the trial judge that P.R. had driven to the defendant's house in a motorhome that had not been thoroughly searched. The defendant contends that "[t]his information was material to the determination of probable cause and was omitted for the purpose of misleading the magistrate." We disagree.

¶ 27    Omitted information is material under *Franks* only if "it is of such a character that had it been included in the affidavit it would have defeated probable cause." *People v. Petrenko*, 237 Ill. 2d 490, 500 (2010). Here, as the trial court implicitly found, that P.R. drove to the defendant's house in a motorhome that had not been searched would not have defeated the court's finding that Kaylor had probable cause to believe that P.R. had purchased methamphetamine from the defendant during the controlled buy. See *People v. Morrison*, 178 Ill. App. 3d 76, 83 (1988) (holding that the officer's affidavit established probable cause to search the defendant's residence for cocaine where the officer stated that he had given an individual money and watched the individual enter the residence and return with cocaine); *cf. United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993) (holding that the failure to inform the magistrate judge that a drug-detection dog "had not alerted to" the package sought to be searched for drugs when led to do so effectively reduced probable cause to a reasonable suspicion). Furthermore, while it is arguable that Kaylor should have included the additional information in his warrant application, nothing suggests that Kaylor intentionally omitted the information in an attempt to

12

somehow mislead the court, as the defendant contends on appeal. See *People v. Sutherland*, 223 Ill. 2d 187, 219, 224 (2006).

¶ 28   In his complaint for a warrant, Kaylor advised that he had searched P.R.'s person before P.R. entered the defendant's home and that the search had revealed no money or drugs. Kaylor further advised that after exiting the home, P.R. possessed methamphetamine that had been purchased from the defendant and did not have the cash that Kaylor had previously provided. Kaylor's complaint also alleged that for more than six months, he had been receiving reports that the defendant had been selling methamphetamine and that P.R. had purchased methamphetamine from the defendant on several occasions during that time. Although Kaylor later acknowledged that he could not state with 100% certainty that the methamphetamine he obtained from P.R. had not originated from P.R.'s motorhome, such certainty was not required, and nothing suggests that Kaylor observed anything that would have caused him to question the legitimacy of the controlled buy. Under the circumstances, the trial court did not err in rejecting the defendant's claim that he was entitled to a *Franks* hearing on the grounds that Kaylor's warrant complaint omitted the fact that P.R. had travelled to the defendant's residence in a motorhome that had not been thoroughly searched or subjected to a "drug dog sniff."

¶ 29                                        CONCLUSION

¶ 30   As noted, the purpose of allowing *Franks* hearings is to deter misconduct on the part of the police. *Chambers*, 2016 IL 117911, ¶ 45. In the present case, it cannot be said that Kaylor, as the affiant officer, engaged in any intentional, knowing, or reckless misconduct when obtaining the search warrant for the defendant's home. Furthermore,

even in the absence of P.R.'s express representations that the defendant had sold him methamphetamine during the controlled purchase in question, Kaylor's description of the transaction independently justified the warrant's issuance. We thus conclude that the trial court rightly denied the defendant's motion for a *Franks* hearing and accordingly affirm the court's judgment.

¶ 31   Affirmed.