(No. 62629.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. SAM LUCENTE, Appellee.

*Opinion filed February 20, 1987.*

134

SIMON, J., specially concurring.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Joan S. Cherry, Thomas V. Gainer, Jr., and Thomas P. Needham, Assistant State's Attorneys, of

counsel), for the People.

Robert A. Novelle, of Serpico, Novelle, Dvorak & Navigato, Ltd., of Chicago, for appellee.

JUSTICE RYAN delivered the opinion of the court:

The defendant, Sam Lucente, was charged by information in the circuit court of Cook County with the offense of possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1983, ch. 56½, par. 1401). He filed a motion to quash the warrant under which his apartment had been searched, alleging that the affidavit in support of the warrant contained intentional misrepresentations on the part of the affiant police officer. After an evidentiary hearing, the trial court quashed the warrant and suppressed the evidence seized thereunder. The appellate court affirmed the trial court in a Rule 23 order (87 Ill. 2d R. 23). (137 Ill. App. 3d 1154.) We granted the State's petition for leave to appeal (103 Ill. 2d R. 315).

On August 24, 1981, Officer Ronald Rewers of the Chicago police department executed a complaint for a search warrant. In support of the complaint, Rewers submitted his sworn affidavit. The affidavit stated, in pertinent part, that a reliable, unnamed informant had told Rewers that at approximately 8:30 p.m. on the previous evening, August 23, 1984, the informant went to 3010 South Princeton, to a second-floor apartment on the south side of the hallway, and knocked on the door. The door was opened by a person known to the informant to be the defendant. The informant was admitted into the apartment, where the purchase of marijuana was made. Thereafter, the informant was let out of the apartment.

After a description of the alleged transaction, the affidavit concluded with a section entitled "Reliability."

That section stated: "I have known 10 years [*sic*]. During this time the reliable informant has given me information on 8 times. Eight times led to the arrest of 2 robbery offenders, 2 burglary offenders, 3 theft offenders, and one marijuana offender. Do [*sic*] to the information received from this informant I have received 5 convictions for robbery, burglary, theft, one conviction for marijuana, and 2 cases SOL."

Based upon these averments, a search warrant was issued. Later that evening, Rewers and other officers executed the warrant. No marijuana was discovered, but another controlled substance, valium, was found in a bedroom dresser.

Defendant filed motions pursuant to *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, seeking to quash the warrant and the arrest, and to suppress the evidence seized. The motion alleged that Rewers' warrant affidavit was false and perjurious and specifically denied the charges of Rewers' affidavit. The defendant's initial affidavit in support of his motion contained only denials of the allegations of the affiant's complaint and affidavit. In a supplemental affidavit filed by the defendant it was alleged that he was not present at his apartment during the hours the informant stated he had made the purchase. The defendant's affidavit further stated that on the evening in question he and his wife, Frances, were with his sister, Debra Sciortino, at 509 West 28th Street in Chicago, from 6:30 p.m. through 10 p.m., when he and his wife returned to their apartment. Prior to 6:30 and after 10 p.m., he was in the company of his wife in their apartment.

Defendant's sister, Debra Sciortino, also executed an affidavit in support of the defendant's motion, which stated that she resided at 509 West 28th Street in Chicago with her four minor children, and that on August 23, 1981, at about 6:30 p.m., the defendant and his wife

arrived at her apartment, where they had dinner, visited, and remained continuously until about 10 p.m.

Defendant's wife, Frances, also submitted an affidavit in support of the defendant's motion. She stated that August 23, 1981, was a Sunday and that she was in her husband's company the entire day. She also stated that about 6:30 that evening she and her husband went to his sister's home at 509 West 28th Street in Chicago, where they had dinner and stayed until about 10 p.m., at which time she and her husband returned to their apartment, where they remained in each other's company the remainder of the evening. She further stated that at no time on that day did any individual come to their apartment for the purpose of purchasing marijuana.

Based upon this preliminary showing, the defendant requested an evidentiary hearing to establish that Officer Rewers knowingly or recklessly misled the judicial officer who issued the search warrant. The trial court granted the request for an evidentiary hearing, and also ordered the State to produce the police reports for *in camera* inspection. This procedure was intended to enable the trial court to evaluate the officer's veracity with regard to the informant's existence and reliability, while at the same time protect against disclosure of the informant's identity.

The State resisted the order to produce the police reports, and eventually the trial court ordered their immediate production. The State again failed to produce them, asserting that they could not be located, and the hearing went forward without the reports.

Officer Rewers was called as a witness by the defendant. He testified that after receiving the informant's tip he went to the defendant's apartment building to verify the address. This independent corroboration was not mentioned in the warrant affidavit. Also, a number of inaccuracies in the description of the defendant's residence

contained in the affidavit were brought out. During the testimony of the officer it was developed that there was only one apartment on the second floor of the building, and that there was a separate door leading to the stairs to the second floor. That door was kept locked. It was further learned during the officer's cross-examination that the informant could not have gone to the apartment on the second floor unless someone would have first unlocked the outside entrance door at the foot of the stairs. We previously noted that the officer had failed to mention his surveillance of the premises in his warrant affidavit. Similarly, the defendant did not, in his motion to suppress and his affidavit, mention that the second floor contained only one apartment and that the informant could not have knocked on the door of the apartment unless he had been previously admitted through the locked door on the first floor.

The officer further testified that prior to filing the complaint for the search warrant, when he drove past the premises to verify the informant's statement as to the address, he did nothing to verify whether or not the informant could have gained access to the second floor as he had related to the officer.

The officer's prior relationship with the alleged informant was also explored during the hearing. In the "Reliability" section of the affidavit, Rewers referred to eight prior contacts with the informant. Under questioning, however, the officer stated that the informant had provided information on at least 40 occasions. When asked why he mentioned only eight in his affidavit, the officer explained that they were the most recent contacts and were fresh in his mind. He admitted that with regard to the other 32 incidents the informant had not always been truthful and reliable. Some, but not all of the prior tips had led to arrests.

Rewers also explained his inability to produce the police reports from the eight arrests referred to in the warrant affidavit. He stated that when he prepared the affidavit he obtained the "Reliability" statistics from records he kept on each of his informants. He apparently made it a practice to maintain personal files on the "track record" of past informants for the precise purpose of establishing their reliability in warrant applications. However, he had since been transferred to another unit, and had left his "informant's file" at his prior post. Also, he had no independent recollection of names or case numbers of any of the eight arrests referred to in the warrant affidavit. Without such identifying information the police reports could not be located.

The defendant, his wife and his sister also testified. They essentially reiterated the substance of their affidavits: that the defendant could not have sold marijuana to the informant or anyone else on August 23 because he was at his sister's home at the time of the alleged sale. The defendant and his wife both testified that the door at the ground level leading to the steps to their second-floor apartment was kept locked and that theirs was the only apartment on the second floor. As previously noted, this information was not contained in the affidavits which the defendant filed challenging the veracity of the search warrant affidavit.

The defendant then moved for production of the informant, alleging that his testimony was necessary to establish whether the officer had committed perjury in the warrant affidavit. The trial court agreed and ordered that the informant be produced. The propriety of this order is not before us, and we express no opinion on the authority of the trial court to enter such an order. When the State refused to produce the informant, the trial court ordered the warrant quashed and the evidence suppressed.

In explaining its ruling, the court declared that it found the testimony of the officer incredible. The court expressed particular skepticism about the officer's abandonment of his informant records, noting that "once [the police] have the information, they never leave it. They never lose it. They never forget that informant ***. He always takes that information with him, because he is always in hopes that he may be able to use that information at some time in the future." The conclusion to be drawn from the court's comments is either that the officer fabricated the existence of the informant and therefore made false statements, or at least exhibited a reckless disregard for the truth.

On appeal, the appellate court first accepted the State's contention that no evidentiary hearing should have been held at all, since the defendant had failed to make the necessary preliminary showing under *Franks*. Despite this holding, however, the court went on to consider the evidence adduced at the hearing. Apparently agreeing that the testimony raised serious doubts about the officer's truthfulness, the appellate court ruled that the decision to quash the warrant on the basis of perjury in the affidavit was not manifestly erroneous.

The State's principal contention in this appeal is that the defendant should not have been granted an evidentiary hearing on the issue of the truthfulness of Officer Rewers' affidavit, because he failed to make the "substantial preliminary showing" required under *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674. The State goes on to argue that the failure to meet this threshold requirement should be dispositive, and that the appellate court erred when it went on to review the evidence presented at the hearing. Alternatively, the State contends that even if it was not error for the appellate court to review the merits of the defendant's claim, the finding of intentional or reckless

misrepresentation on the part of Officer Rewers was manifestly erroneous.

As a preliminary matter, we note that there appears to have been considerable confusion as to the nature of the hearing which the trial court granted and conducted. Defendant's counsel insisted throughout that he was seeking not a *Franks* hearing, but a *Garcia* hearing (*People v. Garcia* (1982), 109 Ill. App. 3d 142), under the apparent assumption that the law of *Garcia* was more favorable from a defendant's standpoint.

In *Garcia*, the warrant affidavit included the officer's assertion that he had observed the defendant's automobile parked outside an apartment building where a drug transaction had allegedly taken place. The defendant's affidavit specifically denied each allegation in the officer's affidavit and also stated that the officer could not have seen the defendant's automobile because it was en route from Miami to Chicago on that day and at that time. This preliminary showing was deemed sufficient to warrant an evidentiary hearing. For purposes of this discussion, we assume that the decision to grant a hearing was not a departure from *Franks*. See *People v. Martine* (1985), 106 Ill. 2d 429.

However, the *Garcia* court did not stop there. In *Franks*, the Supreme Court held that if, after the alleged untruths in a warrant affidavit are excised, the remainder is sufficient to establish probable cause, no hearing is required on the defendant's motion, and suppression will not result. (*Franks v. Delaware* (1978), 438 U.S. 154, 171-72, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2684.) In *Garcia*, the appellate court rejected this limitation and declared that if an affidavit contains *any* false statements by the affiant, the warrant executed pursuant thereto must be quashed. (*People v. Garcia* (1982), 109 Ill. App. 3d 142, 149.) The *Garcia* court found support for this position in *People v. Cook* (1978), 22 Cal. 3d

67, 583 P.2d 130, 148 Cal. Rptr. 605, in which a similar rule was advanced. However, *Cook* was expressly based upon article I, section 13, of the California Constitution, which had previously been construed to provide different standards than the fourth amendment of the United States Constitution. The holding in *Garcia*, however, was not based on the Constitution of Illinois.

This case, like *Garcia*, calls for us to define and apply a procedure for challenging the veracity of search warrant affidavits under the fourth amendment. When faced with a Federal constitutional question, we follow the holdings of the United States Supreme Court on that question. Specifically, we must here decide the proper application of the fourth amendment protection as articulated in *Franks*. Insofar as *Garcia* suggests that Illinois law departs from or goes beyond *Franks*, that decision is not to be followed.

Having held that the principles of *Franks* are to control, we turn to their application in this case. In *Franks*, the Supreme Court held that under certain circumstances a defendant may be entitled to a hearing to challenge the veracity of sworn statements made by the police to obtain search warrants.

Prior to *Franks*, attacks on warrant affidavits were absolutely precluded under the law of Illinois and several other States. (See, *e.g., People v. Bak* (1970), 45 Ill. 2d 140.) In creating the *Franks* exception, the court noted that "a flat ban on impeachment of veracity could denude the probable-cause requirement of all real meaning. The requirement that a warrant not issue 'but upon probable cause, supported by Oath or affirmation,' would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile."

*Franks v. Delaware* (1978), 438 U.S. 154, 168, 57 L. Ed. 2d 667, 680, 98 S. Ct. 2674, 2682.

While holding that an absolute ban on veracity challenges was constitutionally prohibited, the court acknowledged that competing considerations called for creation of a rule of limited scope. The court stated the procedure as follows:

> "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks v. Delaware* (1978), 438 U.S. 154, 155-56, 57 L. Ed. 2d 667, 672, 98 S. Ct. 2674, 2676.

Thus, the linchpin of the *Franks* procedure is the "substantial preliminary showing" requirement. Our task in this case is to determine whether such a showing has been made. We are guided by the Supreme Court's elaboration on the requirement in *Franks*:

> "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed

to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. *The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.*" (Emphasis added.) *Franks v. Delaware* (1978), 438 U.S. 154, 171, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2684.

The warrant affidavit at issue in *Franks* included information which the affiant-officer attributed to two informants who were named in the affidavit. In his attack on the affidavit, the defendant alleged that the officer had misrepresented what the informants had told him and offered to prove this claim with the informants' testimony.

The facts of this case differ in a crucial respect. Here, the warrant affidavit was based entirely on information furnished by a *confidential* informant. Thus, this defendant has not been able to interview the informant and cannot offer the informant's testimony as proof that the officer lied. Rather, the defendant's preliminary showing is in the nature of an alibi, tending to establish that *someone*—either the informant or the officer—fabricated the transaction described in the warrant affidavit.

The State argues that this preliminary showing is inadequate to justify an evidentiary hearing. Noting that *Franks* is directed only to impeachment of the *affiant-officer's* veracity, as indicated by the italicized language above, the State asserts that this showing is insufficient because it does not negate the possibility that the informant, rather than the officer, might have been the source of the misstatements. Under this approach, an alibi-type showing will *always* be insufficient, regardless of the quantity and quality of corroboration accompanying it. The State's apparent position is that in order for *any*

defendant to proceed to the hearing stage, he must do precisely what Mr. Franks did: establish *in advance* that the officer misrepresented the informant's tip.

We reject this rigid interpretation of *Franks* for a variety of reasons. First, *Franks* does not limit the method by which the substantial preliminary showing requirement may be made. On the contrary, *Franks* explicitly states that "the framing of suitable rules to govern proffers is a matter properly left to the States." (*Franks v. Delaware* (1978), 438 U.S. 154, 172, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2685.) Thus, the adequacy of a given proffer may depend on the circumstances of each case.

Second, and more fundamentally, the State's position is obviously untenable in anonymous-informant cases such as this. While it is true that the defendant's *ultimate* burden is to show by a preponderance of the evidence that the affiant-officer made deliberate or reckless false statements, *Franks* does not require that the defendant disprove every other possibility at the preliminary stage. If an informant's identity—or very existence—is unknown, a defendant obviously lacks the very information necessary to determine the source of the false statements. If such a preliminary showing were demanded, no hearing could ever result in cases in which all the information to establish probable cause came from an unnamed informant. One need not be overly cynical to realize that such a rule would enable the police to insulate perjury from discovery by the simple expedient of a fabricated informant, and thereafter "remain confident that the ploy was worthwhile" (*Franks v. Delaware* (1978), 438 U.S. 154, 168, 57 L. Ed. 2d 667, 680, 98 S. Ct. 2674, 2682).

A number of other courts have acknowledged this inherent dilemma in anonymous-informant cases and have refused to apply *Franks* so inflexibly as to make hearings unattainable. These courts have realized, and we

concur, that to do so would permit the very evisceration of the probable-cause requirement which *Franks* seeks to prevent. (See *United States v. Brian* (D.R.I. 1981), 507 F. Supp. 761; *State v. Casal* (1985), 103 Wash. 2d 812, 699 P.2d 1234; *People v. Dailey* (Colo. 1982), 639 P.2d 1068.) As we see it, the purpose of *Franks* is to provide meaningful, albeit limited, deterrence of and protection against perjurious warrant applications.

We thus hold that *Franks* does not require defendants faced with anonymous-informant–based warrants to do the impossible. As a preliminary matter, the defendant cannot be required to establish what an anonymous, perhaps nonexistent, informant did or did not say. At the hearing stage, of course, the defendant retains the full *Franks* burden of showing that the officer acted intentionally or with reckless disregard for the truth. Since the question is not properly before us, we express no opinion on whether, or under what circumstances, an informant should be produced to testify at such a hearing.

Having discussed what *Franks* does *not* require, the remaining task is to ascertain what it *does*. Specifically, we must still decide whether the showing made by this defendant was "substantial" within the meaning of *Franks*.

The "conceptual underpinnings" of the *Franks* rule were well stated by Judge Frankel in a prescient pre-*Franks* case, *United States v. Halsey* (S.D.N.Y. 1966), 257 F. Supp. 1002. Therein, Judge Frankel acknowledged that the fourth amendment "probable cause" requirement obviously assumes that there will be a *truthful* showing of probable cause. However, competing concerns preclude veracity challenges in every case. One such concern is the question of "appropriately dividing power and responsibility between the magistrate issuing a warrant and a judge later considering its legality." (*United States v. Halsey* (S.D.N.Y. 1966), 257 F. Supp.

1002, 1005.) Another consideration is the practical necessity that "criminal charges be reached on their merits and resolved with a decent measure of expedition." (257 F. Supp. 1002, 1005.) Yet another factor is the need to make the magistrate's role meaningful, and not subject to routine second-guessing. As Judge Frankel put it:

"If the weight and independence of the issuing magistrate's judgment is to be duly respected, and appropriately fostered, there is in this alone substantial ground for denying the claim that a district judge should routinely, whenever it is merely asked, try the question *de novo*." *United States v. Halsey* (S.D.N.Y. 1966) 257 F. Supp. 1002, 1006.

In ruling against a right to automatic veracity challenges, *Halsey* attempted to "strike a reasonable balance between prudence and the ideal." (257 F. Supp. 1002, 1006.) This "balance" is reflected in the *Franks* "substantial preliminary showing" requirement.

The purpose of the "substantial preliminary showing" requirement is to discourage abuse of the hearing process and to enable spurious claims to "wash out at an early stage." (*Franks v. Delaware* (1978), 438 U.S. 154, 170, 57 L. Ed. 2d 667, 681, 98 S. Ct. 2674, 2684.) Thus, if one visualizes a continuum of potential showings, with mere requests for hearings at one extreme and proof beyond a reasonable doubt at the other, it is clear that *Franks* demands something more than a request, and even more than a defendant's unsubstantiated denial. If "substantial" meant no more than that, *Franks* hearings would be held in every case.

At the other extreme, *Franks* expressly states that in order to prevail *at the hearing* the defendant must prove his claim of perjury by a preponderance of the evidence. (*Franks v. Delaware* (1978), 438 U.S. 154, 156, 57 L. Ed. 2d 667, 672, 98 S. Ct. 2674, 2676.) If the preponderance standard is to apply at the hearing, it follows logi-

cally that the threshold requirement must be something less. Thus, the precise standard lies somewhere between mere denials on the one hand and proof by a preponderance on the other. Put another way, the preliminary burden must be sufficiently rigorous to preclude automatic hearings in every case, but not so onerous as to be unachievable.

In the range of cases falling between these limits, the determination as to whether there has been a substantial showing sufficient to warrant a hearing must be made by the trial judge, and to a degree the decision on the issue will be final. (See *McCray v. Illinois* (1967), 386 U.S. 300, 308-13, 18 L. Ed. 2d 62, 69-72, 87 S. Ct. 1056, 1061-63.) We earlier rejected the broad assertion that an alibi-type showing is *never* sufficient under these principles. Likewise, neither can it be said that such a showing will *always* be sufficient. The determination in a given case must be based upon a careful balancing of the statements in the warrant affidavit versus those in support of the defendant's challenge to the warrant.

For example, if an informant is the source of false statements, a defendant may still be entitled to a hearing to show that the officer acted recklessly in using the information received as a basis for the search warrant. The greater the showing that the informant blatantly lied to the officer-affiant, or that the information from the informant is substantially false, the greater is the likelihood that the information was not appropriately accepted by the affiant as truth and the greater the probability that the affiant, in putting forth such information, exhibited a reckless disregard for the truth. This would be especially true where the warrant affidavit recited no independent corroboration of the information relied upon. In such a case, where the defendant's showing refutes the allegations in the warrant affidavit, and the warrant affidavit lacks any independent corroboration,

the balancing process may well result in a hearing being granted.

We note again, however, that *Franks* is intended to create a *limited* right to veracity challenges. In striking the balance between the concerns discussed above, the trial judge must keep in mind the presumption of validity of the search warrant and the limited nature of the exception to that presumption created by *Franks*. The judge should also consider that, in passing on the motion, the guilt or innocence of the defendant is not being determined. The end sought by the motion is the suppression of evidence through the application of the exclusionary rule as a sanction against the officers for an alleged fourth amendment violation. If the motion is denied, the defendant will still be judged by the truth of the case. *McCray v. Illinois* (1967), 386 U.S. 300, 307-08, 18 L. Ed. 2d 62, 68-69, 87 S. Ct. 1056, 1060-61, quoting *State v. Burnett* (1964), 42 N.J. 377, 385-88, 201 A.2d 39, 43-45.

Given the unavoidably subjective nature of these determinations, it may well be that in some cases a trial judge will deny a hearing when in fact a warrant was issued on the basis of the false statements. It is also true that the same balancing test may result in an evidentiary hearing being held when none is warranted. So long as the trial court's judgment is exercised within permissible limits, that judgment will not be disturbed.

With these principles in mind, we turn to the showing made by this defendant. As mentioned, the defendant submitted three affidavits asserting that the statement in the warrant affidavit could not be true because he was not at his residence at the time the alleged transaction occurred.

The appellate court characterized this showing as "no more than general and substantiated denials," and declared it insufficient. We disagree. Had the defendant's

proffer consisted solely of his own affidavit asserting "I didn't do it," that would amount to an unsubstantiated denial, and that would be plainly insufficient.

This defendant has done more than that, however. His showing is essentially an alibi, and he has corroborated that alibi with two affidavits besides his own. Furthermore, all the defendant's affidavits are sufficiently detailed so as to subject the affiants to the penalties of perjury if they are untrue. (See *People v. Cruz* (1982), 111 Ill. App. 3d 95; Ill. Rev. Stat. 1981, ch. 38, par. 32—2.) In our view, the presence of such sworn corroboration elevates this showing above the level of "mere denial."

To be sure, the defendant's showing might have been stronger. His corroborative affidavits might have come from persons less interested than his wife and sister. Also, the defendant's showing could have included information relating to the impossibility of the informant gaining access to the apartment as described in the warrant affidavit.

Likewise, the officer-affiant's position would have been bolstered had he provided some independent corroboration of the informant's statements. Also, the trial court was critical of the State's evasiveness in its failure to produce documents which would support the officer's affidavit. This failure, in the eyes of the trial judge, may have cast doubt on the veracity of the affidavit. On balance, the showing made was such that the trial judge could permissibly conclude that an evidentiary hearing was warranted. Thus, we shall not disturb that conclusion.

Having held that the defendant made the requisite showing to obtain a hearing, we turn finally to the merits of his claim. The trial court found that the defendant had proved by a preponderance of the evidence that the affiant-officer included deliberate falsehoods or acted in

reckless disregard of the truth in preparing the warrant affidavit. Accordingly, the trial court granted the motion to quash the warrant. That finding was upheld by the appellate court, and we agree that the decision was not against the manifest weight of the evidence.

For the above reasons, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE SIMON, specially concurring:

While I agree with the court's decision, the majority reaches too far by unnecessarily distinguishing *People v. Garcia* (1982), 109 Ill. App. 3d 142, from the instant case. The court in *Garcia* addressed two issues: (1) whether the defendant in that case made the requisite "substantial preliminary showing" (preliminary showing) under *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, to trigger an evidentiary hearing, and (2) whether Illinois should extend *Franks* by requiring an evidentiary hearing when the defendant's preliminary showing fails to eliminate the grounds for probable cause.

Regarding the first issue, both the majority here and the court in *Garcia* reached similar conclusions. In both cases the defendant was challenging a police officer's affidavit containing allegations based on hearsay from an anonymous source. Both this court and the court in *Garcia* determined that a rigid interpretation of *Franks* under these circumstances would place an insurmountable burden on the defendant, and would enable police to insulate perjury from discovery. (116 Ill. 2d at 150; *People v. Garcia* (1982), 109 Ill. App. 3d 142, 146-47.) Both courts resolved the issue in favor of the defendants, holding that a preliminary showing required something less than proof by a preponderance of the evidence but something more than a mere unsubstantiated challenge

of the police officer's veracity. 116 Ill. 2d at 151; 109 Ill. App. 3d 142, 145.

The circumstances in the present case and in *Garcia*, however, are different. In *Garcia*, after the court determined that the defendant had made a preliminary showing under *Franks*, it had to address the State's next argument, that even if the defendant could successfully prove his allegations, probable cause for issuing the warrant still remained because the defendant's only specific challenge was to the presence of his automobile at the scene of the drug transaction; thus, the State argued that under *Franks* an evidentiary hearing was not ·required. (109 Ill. App. 3d 142, 147.) By contrast, the State here has never contended that the defendant's alibi—that he and his family were elsewhere at the time he allegedly sold the drugs—would, if proved, fail to negate a finding of probable cause. Under the facts of this case such an argument would be absurd, given that the hearsay allegation—that the defendant sold drugs at a specified time and place—which was challenged by the evidence the defendant produced, was the sole ground for a finding of probable cause. It is curious, therefore, that the majority, as "a preliminary matter" (116 Ill. 2d at 145), addresses this issue and attempts to distinguish *Garcia* on a point raised by neither party and on an issue totally irrelevant to this case. Such overreaching negates our long-established maxim that "[j]udicial decisions are to be *** limited to the points of law raised on the record necessary to the determination of the case." *Palmer House Co. v. Industrial Com.* (1944), 388 Ill. 542, 547.

Not only does the majority unnecessarily reject the *Garcia* holding, but also the majority's limited discussion of this issue serves only to further confuse the nature of a hearing under *Franks*. My colleagues refer to the defense counsel's request for a *Garcia* and not a *Franks* hearing. What the defendant was referring to was the

degree of proof necessary to trigger an evidentiary hearing and not a different type of hearing than the majority opinion agrees he was entitled to receive. This court's insistence upon distinguishing *Garcia* not only confuses the directive of *Franks*, but also, in reaching an issue neither raised nor relevant to the case itself, is an example of misguided judicial activism.