**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180149-U

Order filed August 21, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0149 Circuit No. 16-CF-2236 |
| WILLIAM E. MILLS, | ) ) ) | Honorable David M. Carlson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE LYTTON delivered the judgment of the court.
Justices Holdridge concurred in the judgment.
Justice McDade dissented.

_____

**ORDER**

¶ 1     *Held*:  (1) The circuit court did not err in denying defendant's motion for a *Franks* hearing; and (2) the circuit court did not abuse its discretion in denying defendant's request for a jury instruction regarding the affirmative defense of necessity.

¶ 2     A jury found defendant, William E. Mills, guilty of three counts of unlawful use of a weapon by a felon (UUWF). The Will County circuit court sentenced defendant to three concurrent terms of five years' imprisonment. On appeal, defendant argues that the court erred in

denying both his motion for a *Franks* hearing and his request for a jury instruction regarding the affirmative defense of necessity. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On October 19, 2016, Joliet police officer Jeffrey Haiduke filed a complaint for search warrant, seeking to search defendant as well as the premises located at 120 Jessie Street in Joliet. Through the search Haiduke sought to uncover crack cocaine, currency, drug paraphernalia, and any other evidence of drug possession and intent to deliver.

¶ 5        The complaint was based largely on information provided by a confidential source referred to as Pat Doe. According to the complaint, Doe had been inside the residence with defendant within the prior seven days. The complaint provided a detailed physical description of the exterior of the residence. Doe observed defendant in possession of "an off white rock like material which Pat Doe knew to be crack cocaine through previous experience." Defendant indicated that the crack cocaine was his. Doe also observed defendant exchange packages of the crack cocaine for money. Doe knew that defendant had lived at the residence in question for at least the prior month. Doe correctly identified defendant in a photograph provided by Haiduke.

¶ 6        The complaint indicated that Haiduke verified defendant's address through police records, which showed that defendant was paroled to the residence in question. Haiduke also confirmed Doe's description of the exterior of that residence by viewing it himself. The complaint also explained that Doe had a prior conviction for retail theft and had delivered Haiduke the information in exchange for money. The complaint further indicated that both Haiduke and Doe would appear before the court and swear to their statements under oath.

¶ 7        The circuit court issued the requested warrant, and the ensuing search resulted in the seizure of, *inter alia*, two firearms and ammunition. The State subsequently indicted defendant on three counts of UUWF (720 ILCS 5/24-1.1(a) (West 2016)).

¶ 8        Defendant filed a "Motion to Suppress Evidence Pursuant to *Franks v. Delaware*." In his motion, defendant alleged that Haiduke had failed to corroborate key components of Doe's account and had included material factual misrepresentations in his complaint indicative of a reckless disregard for the truth. Specifically, defendant alleged that Doe was not in the residence during the contemplated time period. Defendant asserted that his substantial showing of a material falsehood thus warranted a full hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1987).

¶ 9        Defendant attached four affidavits in support of his motion. The affidavits were provided by defendant's fiancé, Candi Uziel; Candi's mother, Rosemary Uziel; Rosemary's mother, Ada Rexroad; and defendant himself. The affidavits of Candi and Rosemary described in detail their work schedules and their comings and goings from the residence during the week in question. Both stated that no one had been in the residence other than the four affiants. Rexroad stated that she was 86 years old and defendant was her caregiver when Candi and Rosemary were at work. Rexroad was in the house the entire week in question and never observed anyone there other than the affiants. Defendant stated that he cared for Rexroad when Candi and Rosemary were at work and provided details of his duties. He denied possessing or selling crack cocaine during the week in question.

¶ 10       Notably, defendant alleged in his motion that "[t]he confidential source executed an affidavit and testified before the Honorable Daniel Rozak on October 19, 2016." The motion further alleged that it was Judge Rozak who issued the warrant. In its responsive filing, the State also alleged that Doe appeared before the issuing judge and swore that the information provided

3

to Haiduke was true and correct. During arguments on defendant's motion, however, Judge David Carlson commented that it was he who had issued the warrant. Noting that the police generally bring the informant to court to obtain warrants, and that he "may have knowledge of things that aren't contained within the four corners" of the complaint, Judge Carlson asked defendant if he would prefer a substitution of judge. Defendant indicated that he wished to proceed under Judge Carlson. In arguing that defendant had not met the required threshold, the State repeatedly emphasized that Doe had appeared before the court.

¶ 11    The circuit court denied defendant's motion, opining that the collective affidavits could not establish that no one else had been in the residence. The court noted, however, that its denial was without prejudice, and that it would allow defendant to file an amended motion.

¶ 12    Defendant did subsequently file an amended motion to suppress. While the motion itself was substantially similar to the original, it included four amended affidavits that provided more details. Candi averred that she left for work most days at 3:50 p.m. and returned at 12:15 a.m. On days that she did not work, she was home all day. Rosemary averred that she left the house for work at 5:40 a.m. and returned at 4 p.m. She also remained at home on days that she did not work. Each affiant also stated that two dogs lived in the house, that the dogs would bark whenever anyone entered the house, and that they did not recall the dogs ever barking at any unexpected times throughout the week in question.

¶ 13    During the arguments on defendant's amended motion, the court affirmatively stated: "I am the one who interviewed the confidential source." The court ultimately denied the amended motion, opining that the affidavits still allowed for periods of time in which the household members were asleep, and that the testimony regarding the dogs did not sufficiently refute that.

¶ 14 At trial, Robert Badertscher of the Joliet Police Department testified that he participated in the execution of the search warrant. He testified that when he entered the residence with his narcotics-detecting canine, "there were two older ladies sitting on a couch." In the course of the search for narcotics, Badertscher's canine appeared to alert on a wall blocked by a bed in the back bedroom. With the assistance of other officers, Badertscher moved the bed away from the wall, at which point he discovered a firearm covered in a cloth. No narcotics were ever found within the residence.

¶ 15 James Kilgore of the Joliet Police Department testified that the two women in the house advised him that the back bedroom, where Badertscher discovered the firearm behind the bed, belonged to defendant. Mail addressed to defendant was found in that bedroom. Kilgore explained that the firearm found behind the bed had ammunition in it. A second firearm was later found in a plastic bin in the same bedroom. Kilgore participated in the subsequent interrogation of defendant, a video of which was played for the jury. In the interrogation, defendant admits that he possessed both firearms.

¶ 16 Rosemary, testifying for the defense, explained that defendant had lived with her at the residence for three or four years. When asked about "issues" within her neighborhood, Rosemary stated: "Well, I have somebody that's not very nice around me." She explained that she had seen people "smoking crack out in the driveway" of her next-door neighbor's home. Rosemary testified that she had once seen 12 people exit her neighbor's house at once, which frightened her. Sometimes the people smoking crack were on her property. She testified that people frequently came and went from that house, and often stood in groups outside. Defendant would sometimes tell them to disperse or to turn down their radio. All three bedrooms of Rosemary's house were on the side closest to that neighbor.

5

¶ 17     Defendant testified that he kept the firearms for protection from his neighbors, who he referred to as "neighbors from hell." Defendant testified: "[T]hese people are a nuisance to the neighborhood. I mean, it's just constant traffic all day. I mean, our bedroom windows is right there *** by these particular individuals' house, *** it just chaotic all the time." Defendant testified that people had destroyed the front lawn of his residence and that he had had "altercations" with the drug dealers living in the house. Defendant continued: "I'm afraid somebody might do something to me because I'm always *** there trying to *** keep the peace, you know what I mean, keep these people off our property. Trying to keep the noise level down." He testified that he feared for his life.

¶ 18     Defendant explained that people sometimes walked or even drove across the lawn of his house. Foot traffic to the house next door was especially high at night. At some point, defendant put logs in the front yard so that no one could drive across the lawn. Defendant testified that he acquired both firearms within one week of the execution of the search warrant. The gun covered in a cloth behind his bed was inoperable, and defendant planned to get rid of it. Defendant denied selling drugs.

¶ 19     At the jury instruction conference, defense counsel requested an instruction on the affirmative defense of necessity, specifically, Illinois Pattern Jury Instructions, Criminal No. 24-25.22 (4th ed. 2000). Defense counsel argued that defendant "reasonably believed that his conduct in having a gun was necessary to avoid any further harm to his family." The State objected, arguing that, at most, defendant had described a generalized fear, rather than an imminent threat. The court denied defense counsel's request.

¶ 20     The jury found defendant guilty on all counts. The court sentenced defendant to terms of five years' imprisonment on each count, to be served concurrently.

6

¶ 21                                    II. ANALYSIS

¶ 22        On appeal, defendant argues that the circuit court abused its discretion in denying his motion for a *Franks* hearing. He maintains that his motion and affidavits made a substantial showing that Haiduke acted with reckless disregard for the truth in his application for search warrant. Defendant also argues that the court abused its discretion in denying his request for a jury instruction on the defense of necessity. We address each argument in turn.

¶ 23                                  A. Search Warrant

¶ 24        In *Franks*, 438 U.S. at 171-72, the United States Supreme Court held that a defendant may challenge the truthfulness of statements found in an application for search warrant, in certain limited circumstances. The Court held:

> "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155-56.

A defendant makes the required "substantial preliminary showing" when he offers proof that is "somewhere between mere denials on the one hand and proof by a preponderance on the other." *People v. Lucente*, 116 Ill. 2d 133, 151-52 (1987). A reckless disregard for the truth "has been defined as requiring proof (1) that the affiant entertained serious doubts as to the truth of the allegations in the affidavit, or (2) of circumstances evincing obvious reasons to doubt the veracity of the allegations." *People v. Creal*, 391 Ill. App. 3d 937, 944 (2009).

¶ 25        In *Franks*, the Supreme Court held that a defendant could only challenge the veracity of statements made by the affiant, rather than those of a nongovernmental informant. *Franks*, 438

7

U.S. at 171.  In *Lucente*, however, our supreme court recognized that such a rule rendered those warrant applications based solely on informant testimony immune from review.  *Lucente*, 116 Ill. 2d at 149.  Accordingly, the *Lucente* court held that:

> "[I]f an informant is the source of false statements, a defendant may still be entitled to a hearing to show that the officer acted recklessly in using the information received as a basis for the search warrant.  The greater the showing that the informant blatantly lied to the officer-affiant, or that the information from the informant is substantially false, the greater is the likelihood that the information was not appropriately accepted by the affiant as truth and the greater the probability that the affiant, in putting forth such information, exhibited a reckless disregard for the truth.  This would be especially true where the warrant affidavit recited no independent corroboration of the information relied upon." *Id.* at 152.

¶ 26    Notably, the circuit court in *Lucente* had granted the defendant's request for a *Franks* hearing, and had ultimately quashed the search warrant following that hearing.  In affirming on the State's appeal, the court stressed that

> "Given the unavoidably subjective nature of these determinations, it may well be that in some cases a trial judge will deny a hearing when in fact a warrant was issued on the basis of the false statements.  It is also true that the same balancing test may result in an evidentiary hearing being held when none is warranted.  So long as the trial court's judgment is exercised within permissible limits, that judgment will not be disturbed." *Id.* at 153.

¶ 27    In *Voss*, the First District set forth a comprehensive list of factors to be considered in determining whether a defendant has made the required substantial showing. *People v. Voss*, 2014 IL App (1st) 122014, ¶ 22. Those factors are:

> "(1) whether defendant's motion is supported by affidavits from interested parties or disinterested third persons [Citation];
>
> (2) whether defendant has available any objective evidence to corroborate the affidavits such as records of hours worked or receipts for travel or other activities;
>
> (3) whether the information in the affidavits, accepted as true, renders it impossible for the confidential informant's testimony to be true [Citations];
>
> (4) whether the matters asserted by defendant are in the nature of an alibi or a general denial that he engaged in the conduct giving rise to probable cause [Citation];
>
> (5) whether the information supporting probable cause is the result of a police investigation or information supplied by an informant or other confidential source;
>
> (6) if probable cause is based on information from a confidential source, whether the warrant affiant took steps to corroborate that information [Citation];
>
> (7) the facial plausibility of the information provided by the confidential source [Citation];
>
> (8) whether the affiant had any prior experience with the confidential source that would enhance the source's reliability [Citation];

(9) whether there exist any circumstances that should counsel against believing the information provided by the confidential source [Citation]; and

(10) whether the confidential source appeared before the issuing magistrate who had the opportunity to examine the source and asses[s] his or her credibility [Citation]." *Id.*

¶ 28    Before addressing the above factors, we are compelled to discuss this court's decision in *Creal*, 391 Ill. App. 3d 937 (2009), as the facts in that case are remarkably similar to those before us here.  In *Creal*, the officer-affiant obtained a search warrant based largely on information provided by an informant.  *Id.* at 939.  The complaint stated that the informant had been in the defendant's house in the prior seven days and had seen the defendant sell cocaine.  *Id.*  The informant described the defendant's house, which the officer corroborated.  *Id.*  The informant also identified the defendant in a photograph.  *Id.*  The officer and the informant both appeared personally before the magistrate.  *Id.*

¶ 29    In requesting a *Franks* hearing, the defendant provided three affidavits from people living in his house, including himself and his girlfriend.  *Id.*  Those affidavits provided a detailed accounting of the housemembers' schedules during the week in question, in an effort to demonstrate that the informant could not have been in the house during that period.  *Id.* at 939-41.  After the State filed a response to the defendant's motion, the defendant filed a motion for discovery, requesting that the State provide him with the date and time that the informant was in his house.  *Id.* at 941.  The court granted the motion for discovery and, when the State declined to comply with that order, dismissed the charges against the defendant.  *Id.* at 942.

¶ 30    On the State's appeal, this court concluded that discovery was not warranted because the defendant had failed to make the substantial showing required to proceed to a full *Franks* hearing.

10

*Id.* at 946. In so ruling, this court found that the defendant had failed to demonstrate that the officer-affiant had acted with reckless disregard for the truth. *Id.* at 944. More specifically, the court found that the officer had no reason to believe the informant had been untruthful. *Id.* at 944-45. The court also pointed out that the officer had corroborated the informant's account, adding: "While the defendant can point to other steps that [the officer] could have possibly taken, he has not shown that [the officer] recklessly disregarded the truth by failing to do so." *Id.* at 945. Finally, the court found that the affidavits of household members did not render the informant's account "impossible," pointing out, *inter alia*, that the defendant's girlfriend did not aver that she was in the house and by the defendant's side at all times. *Id.*

¶ 31    We turn now to the instant case. The application of the *Voss* factors largely favors the circuit court's judgment. Foremost among those factors is one referenced by the circuit court itself: Even assuming the veracity of the amended affidavits, they do not render it impossible that Doe's testimony was true. As the court pointed out, the affidavits allowed for significant periods during which everyone in the house was asleep. While the amended affidavits attempted to address that issue through testimony about the dogs, those facts still did not render Doe's account impossible. None of the affiants stated that the dogs barking always woke them up, nor that they investigated every time the dogs would bark. The amended affidavits also lacked information regarding the entrances to the house, the location of the affiants' bedrooms, or the usual location of the dogs, all facts that may have supported defendant's contention that no one could have possibly entered the house unnoticed.

¶ 32    It should also be noted that at least one inconsistency makes it difficult to fully assume the veracity of the amended affidavits. Both defendant and Rexroad averred that defendant was Rexroad's caregiver when Candi and Rosemary were at work. Both affidavits described

11

defendant's caregiving duties in some detail, and defendant described it as his primary responsibility. Yet, Candi's and Rosemary's affidavits establish that they both worked on the same day six times during the nine-day period in question. On five of those occasions, Candi left for work only 10 minutes before Rosemary returned; on one day Candi left one hour earlier than normal. Collectively, then, the affidavits would establish that defendant's caregiving responsibilities lasted a mere two hours over the course of nine days. This casts intrinsic doubt upon either the described extent of his responsibilities, or the nearly perfect overlap of Candi's and Rosemary's work schedules.

¶ 33     Looking at the other *Voss* factors, it is clear that the affidavits in this case were provided not by disinterested third parties, but by defendant, his fiancé, and her family members. Beyond the standard familial connections, each affiant may have been particularly interested in the outcome given defendant's apparent role in taking care of Rexroad. Furthermore, the affidavits from interested parties were not corroborated through any sort of independent or objective evidence. Defendant asserts on appeal that there could be no objective records of his alibi, as he was simply at home caring for Rexroad. Yet, the accounts of defendant's affiants *were* particularly susceptible to objective corroboration. For instance, had Candi and Rosemary provided work records or an affidavit from their employer, such evidence would have essentially confirmed that their schedules were so perfectly aligned.

¶ 34     Next, it cannot be said that Doe's information was facially implausible. There is nothing inherently farfetched about the account of being in a person's home and seeing them sell drugs.

¶ 35     Also, the fact that a magistrate was able to examine Doe and assess his or her credibility is a factor strongly in favor of the affiant. On that point, defendant insists on appeal that the circuit court did not confirm that Doe had appeared, and "[n]o transcript or other information was obtained

12

by either party as to the content of the testimony of the [informant]." While these comments are not accompanied by any overt argument, defendant's implication is that this court should not consider Doe's appearance before the magistrate as a factor in the State's favor. We disagree. First, while Judge Carlson initially alluded to the likelihood that he had examined Doe, he later confirmed that fact. See *supra* ¶ 13. Moreover, defendant affirmatively stated in his motion that Doe had appeared in court. The State subsequently emphasized that very point in its argument. Defendant is estopped from now asserting otherwise. See *People v. Carter*, 208 Ill. 2d 309, 319 (2003) ("Under the doctrine of invited error, an accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error.").

¶ 36    Many of the *Voss* factors in defendant's favor relate to Haiduke's use of an anonymous informant. Indeed, the complaint for search warrant was based almost entirely on Doe's account, rather than an independent police investigation. Next, facts such as Doe's conviction for retail theft and his or her exchange of information with Haiduke for money tend to undermine his or her credibility. Although we recognize that such facts may be commonplace with anonymous informants, such that they should not be considered automatically disqualifying. Further, the complaint provided no details concerning the relationship history of Haiduke and Doe, such that Haiduke would have any reason to find Doe particularly credible. Finally, the facts presented in the amended affidavits were more akin to an alibi for defendant, rather than a mere denial of Doe's accounts.

¶ 37    The final factor, concerning Haiduke's corroboration of Doe's accounts, does not clearly favor one result over another. Haiduke partially corroborated Doe's account, by verifying the description of defendant's residence and ensuring that Doe was able to identify defendant in a photograph. In *Creal*, the court credited those steps in corroboration. Yet, we would be remiss to

13

not point out that the corroboration here, as in *Creal*, related only to ancillary details, rather than the operative facts giving rise to probable cause. In other words, Haiduke did not corroborate the existence of cocaine in defendant's residence either through a controlled buy or through a second source. He merely confirmed that Doe had seen defendant and the exterior of his residence.

¶ 38     On balance, the plurality of *Voss* factors weigh in favor of the circuit court's ruling. That majority includes the most significant factors, namely, defendant's failure to include affidavits from disinterested witnesses, his failure to corroborate any accounts with independent evidence, and the overarching failure of the affidavits in establishing the impossibility of the informant's account. Given these shortcomings, we find that defendant failed to make a substantial showing that Haiduke actually doubted Doe's account or that circumstances existed such that Haiduke should have doubted the veracity of Doe's account. *Creal*, 391 Ill. App. 3d at 944. In short, defendant failed to make a substantial showing that Haiduke acted with a reckless disregard for the truth.

¶ 39                                      B. Necessity Instruction

¶ 40     The Criminal Code of 2012 (Code) dictates that

> "[c]onduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." 720 ILCS 5/7-13 (West 2016).

Furthermore, it is well-settled that "[t]he defense of necessity applies when the threat of harm was immediate and defendant's conduct was the sole option to avoid injury." *People v. Boston*, 2016 IL App (1st) 133497, ¶ 39. A defendant is entitled to an instruction on the defense of necessity

14

when there is "some evidence" that supports that theory. *People v. Kite*, 153 Ill. 2d 40, 44 (1992). We review the circuit court's refusal to give a requested jury instruction for an abuse of discretion. *People v. McDonald*, 2016 IL 118882, ¶ 42.

¶ 41     Rosemary testified that her neighbor's house had many visitors who would often congregate while smoking crack. The visitors made a lot of noise and sometimes went onto Rosemary's lawn. Defendant also chronicled the "constant traffic" and "nuisance" presented by the neighbor's visitors. Like Rosemary, defendant testified to the loud noise and occasional trespassing. He also testified that he was afraid someone "might do something" to him and that he was in fear for his life.

¶ 42     Defendant's assertions of his subjective fear are insufficient to warrant an instruction on necessity. The Code requires that a defendant's belief that his conduct is necessary to prevent harm must be reasonable. 720 ILCS 5/7-13 (West 2016). It follows that in order for a defendant to procure an instruction on necessity, there must be "some evidence" of reasonableness. *Kite*, 153 Ill. 2d at 44. Neither Rosemary nor defendant ever described any sort of personal danger, such that could be remedied by defendant keeping firearms in the house. Each described the smoking of crack, trampling of the lawn, and noise-making, none of which would inherently cause defendant to fear for his life.

¶ 43     Defendant argues in his brief: "It does not take much speculation to imagine the danger one might be in with crack-smoking occurring, every day, just on the other side of a wall. The defense submits this satisfies the 'some evidence' standard ***." Thus, defendant tacitly acknowledges that his request for a necessity instruction was based on speculation, rather than actual evidence. To be sure, one may fairly speculate that the selling and consumption of illegal drugs has the potential to lead to violence or other criminal activities. However, its evidence, not

speculation, that is required in order for an instruction on necessity to be delivered. Accordingly, we find that the circuit court did not abuse its discretion in denying defendant's request for such an instruction.

¶ 44                                        III. CONCLUSION

¶ 45        The judgment of the circuit court of Will County is affirmed.

¶ 46        Affirmed.

¶ 47        JUSTICE McDADE, dissenting:

¶ 48        The majority finds that defendant failed to make the substantial preliminary showing necessary to obtain a full Franks hearing. I disagree, and therefore respectfully dissent.

¶ 49        Defendant here needed to demonstrate, to some extent, the falsity of an anonymous informant's testimony that he or she had been in defendant's house in a certain seven-day period. Facing the tall task of proving a negative, defendant compiled an exhaustive accounting of the whereabouts of each household member, each of whom averred that no outsiders were in the house on the dates in question. Defendant's affidavits even included detailed descriptions of the nighttime behavior of the family dogs. Both the circuit court and the majority concluded that this fell short of the "substantial showing" standard, which "requires something more than mere denial but something less than a preponderance of the evidence." People v. Chambers, 2016 IL 117911, ¶ 72. I would suggest that if this defendant fell short of that standard, it is unclear how any defendant challenging an anonymous informant's facts could ever achieve a Franks hearing.

¶ 50        In pointing out the ostensible shortcomings of defendant's challenge, the majority asserts that the affidavits did not include, for example, allegations "that the dogs barking always woke [the affiants] up." Supra ¶ 31. This suggestion illustrates the impossibly high standard to which the majority is holding defendant. A person cannot actually know if a dog did or did not bark while

16

they were asleep, and therefore such an allegation would be impossible. Similarly, the court suggests that defendant should have supplied Candi's and Rosemary's work schedules to buttress their claims. This suggestion—aside from presuming the ease with which one may procure six-month-old work records—betrays the majority's assertions elsewhere that it is assuming the information in the affidavits to be true. Supra ¶ 31. Finally, the majority discounts defendant's affidavits because they were provided by interested parties. This further illustrates the apparent impossibility of defendant's task: proving that an anonymous person was not in the house while affidavits from the people who live in that house are deemed inherently less trustworthy.

¶ 51        In stark contrast to the difficulty of defendant's position is the patent ease with which Haiduke could have corroborated Doe's information. Even the majority concedes that "the complaint for search warrant was based almost entirely on Doe's account, rather than an independent police investigation." Supra ¶ 36. Haiduke took no steps to corroborate the incriminating outside of the information provided by Doe. While he confirmed the description of the house and allowed Doe to identify a photograph of defendant, this information would be available to anyone who knew defendant, or who did not know him at all but just hung around outside his house. It is not probative of any wrongdoing. The actual basis of the search warrant was Doe's report that he or she had seen defendant sell crack cocaine from inside his home. As the majority points out, there were a number of ways in which Haiduke could have corroborated this information: he could have found a second source, he could have conducted a controlled buy, or he could have surveilled defendant's home. Haiduke did none of these things, and Doe's information was accordingly uncorroborated.

¶ 52        Despite acknowledging Haiduke's utter failure to corroborate the anonymous information, the majority cites that fact as merely one Voss factor that happens to favor defendant. This

17

dismissive approach downplays the "strong distrust" with which anonymous tips should be viewed. United States v. Martinez, 486 F.3d 855, 862 (5th Cir. 2007) (citing Florida v. J.L., 529 U.S. 266 (2000)). To be sure, Doe was not fully anonymous, as at least Haiduke knew his or her identity. This, at least in theory, allowed Haiduke to assess Doe's credibility and the basis for his or her knowledge. See J.L., 529 U.S. at 270. Indeed, the Supreme Court has made clear that "an informant's 'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant in determining the value of his report." Illinois v. Gates, 462 U.S. 213, 230 (1983).

¶ 53       Yet, these were precisely the areas in which Haiduke's warrant application fell woefully short. Haiduke provided absolutely no details regarding his relationship with Doe, nor did he aver any particular reasons that he had to believe Doe was being truthful. As there was no assessment of Doe's credibility, Doe may as well have been an anonymous informant. Moreover, Haiduke acknowledged that Doe provided the relevant information in exchange for money, which tends to undercut his or her credibility. Indeed, the payment for information made it especially important that Haiduke explain his reasons for trusting Doe. See People v. Adams, 131 Ill. 2d 387, 397 (1989) ("Where the informant had been paid, however, courts have looked to whether the informant had in the past established a pattern of having provided reliable information to the police."). Furthermore, no details were provided even generically explaining Doe's knowledge of defendant, nor were any details provided explaining how or why Doe was familiar with crack cocaine such that he could positively identify it. The many shortcomings on the face of his warrant application tend to indicate a reckless disregard for the truth on Haiduke's part. See Franks, 438 U.S. at 155-56.

¶ 54       Ultimately, the majority concludes that a "plurality of Voss factors weigh in favor of the circuit court's ruling"—specifically, five in the court's favor, four in defendant's favor, and one

18

that is inconclusive. Supra ¶ 38. Of course, I would first point out that the one factor the majority finds to not favor either side is that regarding Haiduke's corroboration. As explained above, however, Haiduke's "partial" corroboration of Doe's account was meaningless; he failed to corroborate the relevant facts. More importantly, I would suggest that application of the Voss factors should be more than a simple countig exercise. Rather, it should entail a qualitative analysis that accounts for the peculiar circumstances of each case. Here, each factor that the majority counts against defendant relate to his nearly impossible burden of proving a negative. These factors are greatly outweighed by the fundamental deficiencies in the warrant application; namely, that Haiduke disclosed absolutely no reason to believe Doe and made no attempts to corroborate the primary facts of his account. Accordingly, I would find that defendant made a substantial preliminary showing of a reckless disregard for the truth and would remand the matter for a full Franks hearing.