2026 IL App (2d) 250196-U
No. 2-25-0196
Order filed May 27, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

KEVEEN FULLWILEY, Defendant-Appellant.

Appeal from the Circuit Court of Lake County.
Honorable Christopher Stride, Judge, Presiding.
No. 10-CF-3058

PRESIDING JUSTICE KENNEDY delivered the judgment of the court.
Justices McLaren and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court properly denied defendant's postconviction claim under *Brady v. Maryland*, 373 U.S. 83 (1963), that the State withheld exculpatory evidence, which, if disclosed earlier, would have probably led the trial court to accept defendant's claim under *Franks v. Delaware*, 438 U.S. 154 (1978), that the affidavit in support of the search warrant contained false statements that rendered the affidavit insufficient. The new material did show that the affidavit contained false statements about the dates of alleged drug transactions involving defendant, but even assuming that the affiant included the falsehoods knowingly or recklessly, the result of the *Franks* hearing would not have probably changed, because the affidavit furnished probable cause apart from the falsehoods.

¶ 2    Defendant, Keveen Fullwiley, appeals the denial of his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). We affirm.

¶ 3                                     I. BACKGROUND

¶ 4    In April 2011, defendant was charged with one count of unlawful possession of a controlled substance (cocaine) with intent to deliver (720 ILCS 570/401(a)(2)(B) (West 2010)) and one count of unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(d) (West 2010)). Two other charges were severed before trial.

¶ 5    On May 10, 2012, defendant filed a motion for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). He contended that evidence seized per a warrant to search his apartment should be suppressed because the warrant application relied on falsehoods.

¶ 6    The *Franks* motion alleged as follows. On September 3, 2010, Zion police officers, including Kenneth Vaughn, executed a warrant to search defendant's apartment and seized alleged drugs, money, and other items. Attached to the motion were the complaint and affidavit for a search warrant, dated August 31, 2010. In the affidavit, Vaughn averred that he was engaged in an ongoing narcotics investigation that involved defendant. "[W]ithin the last month," the Zion police "conducted four controlled purchases of cocaine from [defendant]" at his apartment on the first floor of a multi-unit family dwelling on 33rd Street in Zion. The same confidential informant (CI) was used for all four purchases. The affidavit did not specify the date or time of any transaction.

¶ 7    Vaughn averred that, for the first controlled purchase, he gave the CI cash and ensured that the CI had no contraband on his person or in his vehicle. Vaughn observed the CI drive to defendant's residence and enter it. Several minutes later, Vaughn observed the CI exit the residence and proceed to his vehicle, after which he handed Vaughn a plastic bag containing a substance that later tested positive for the presence of cocaine. The CI told Vaughn that defendant invited the CI into the residence; the CI asked to purchase from defendant a specified quantity of cocaine; defendant acknowledged that he could sell the CI the quantity of cocaine requested; defendant

displayed a plastic bag containing a "white rock-like substance"; the CI handed cash to defendant; and defendant handed the plastic bag to the CI.

¶ 8        Vaughn described the second controlled purchase similarly to the first one. After Vaughn searched him, the CI went into defendant's residence with cash provided by Vaughn and emerged with a plastic bag containing a substance that later testified positive for the presence of cocaine. The CI described for Vaughn the transaction that occurred within defendant's residence.

¶ 9        For the third controlled purchase, Vaughn averred that he searched the CI, gave him cash for the purchase, and drove the CI to a "pre-arranged meeting location." Vaughn watched the CI exit the vehicle and meet with defendant. When the CI returned to the vehicle, he gave Vaughn a plastic bag containing a substance that later tested positive for the presence of cocaine. The CI told Vaughn that, upon meeting defendant, the CI asked to purchase cocaine from defendant; defendant displayed to the CI a plastic bag containing a "white rock-like substance"; the CI handed cash to defendant; and defendant handed the plastic bag to the CI.

¶ 10        Vaughn described the fourth controlled purchase similarly to the third one. After searching the CI, Vaughn drove him to a "pre-arranged meeting location" where the CI met with defendant and returned with a plastic bag containing a substance that later tested positive for the presence of cocaine. The CI described the transaction for Vaughn.

¶ 11        Vaughn also averred that, before the third and fourth controlled purchases, Vaughn's fellow officers observed defendant leave his residence, proceed directly to the CI's location, and return to his residence.

¶ 12        In his *Franks* motion, defendant denied that he ever sold contraband to anyone. Defendant alleged that Vaughn (1) signed the search warrant affidavit without corroborating any of the CI's hearsay statements and (2) knowingly or recklessly included the false statement that the CI

purchased narcotics from defendant "at some time in the month of August 2010." This statement was false, defendant explained, because "[d]uring the last two weeks of August 2010[,] [he] was not present at the apartment because he was travelling out of state visiting family."

¶ 13    Defendant's motion attached three affidavits. One was defendant's. He stated that, "during the last two weeks of August 2010," he was not at his apartment because he was traveling out of state with his mother, Marie Fullwiley, and his friend, Tanya McCarthy. He denied that he ever sold contraband to anyone. The other affidavits were from Marie and McCarthy, both of whom averred that, "during the last two weeks of August 2010," defendant was not at his apartment, as he was traveling to Memphis, Tennessee, to visit family.

¶ 14    On May 10, 2012, the trial court held a hearing, which the court and the parties characterized as one to determine whether defendant had made the necessary preliminary showing to obtain a full *Franks* hearing. See *Franks*, 438 U.S. at 171-72; *People v. Lucente*, 116 Ill. 2d 133, 145 (1987). The court admitted the search warrant, the complaint and affidavit for the warrant, and the affidavits of defendant, Marie, and McCarthy. The court also received the following testimony.

¶ 15    McCarthy testified that defendant was her longtime boyfriend. In August 2010, he resided in the 33rd Street apartment. McCarthy was asked, "Now at some time during the month of August [2010], specifically, the last couple weeks, was there a trip [in] August 2010—was there a trip taken?" She answered, "Yes, we went to Memphis, Tennessee [on] August 20, 2010. We stayed for about eight, nine days." McCarthy testified that, from August 1 through August 19, 2010, McCarthy was at home in Illinois, and defendant "was mostly at [her] house back and forth." He "spent nights at [her] house all the time." But there were "periods of time" where defendant was at his apartment. Before August 2010, McCarthy never spoke to any Zion police officers about defendant.

¶ 16    Marie testified that, in August 2010, she, defendant, and McCarthy drove to Memphis at "almost [the] end of the month, maybe [the] twentieth or something." They attended a family reunion. Marie was asked, "During that period of time, last two weeks of August [2010,] you were only in Memphis, Tennessee?" She testified, "Correct." Before August 2010, Marie never spoke to any Zion police officers about defendant.

¶ 17    Defendant testified that, for the final two weeks of August 2010, he was away in Memphis. He clarified that he left for Memphis with Marie and McCarthy "around" August 20, 2010. They spent the rest of the month there. In August 2010, he resided in the 33rd Street apartment. He spent the "majority" of his time at McCarthy's house but did spend "periods of time" at his apartment. Defendant denied that he sold drugs to anyone in Zion in August 2010.

¶ 18    The State called Vaughn, who testified that, on August 31, 2010, he appeared in court to request the search warrant. He agreed that his affidavit did not mention the CI's "tip" or any other information that the CI gave him before he began his investigation of defendant. The affidavit also did not comment on the CI's credibility.

¶ 19    After hearing arguments, the trial court denied the *Franks* motion, reasoning in part as follows:

"Counsel for the defense has established that the defendant was not present the last two weeks [of August 2010], and *** the [c]ourt has heard no testimony even though the complaint talks about the officer actually seeing the defendant when some of these contacts were made between [the CI] and the defendant, *** there is no evidence of that presented to the [c]ourt.

    The State could have asked those questions, and they chose not to. So the [c]ourt does not have anything that would contradict the defendant's position. However, that being

- 5 -

the case, there is nothing in this complaint that would indicate that these purchases were not done prior to [defendant] leaving the State of Illinois going to Tennessee. ***.

I find that the defense has not made a substantial showing because the four purchases could have occurred prior to August 20 when the defendant was not here and that would, therefore, not eliminate the probable cause that the police had when they presented this information *** to the Judge. So defendant's motion for a *Franks* hearing is denied[.]"

¶ 20 In November 2012, a jury found defendant guilty of both possession charges. He was sentenced to prison terms of 29 years on the cocaine conviction and 5 years on the cannabis conviction. On direct appeal, he contended that (1) he was not proved guilty beyond a reasonable doubt; (2) his trial counsel was ineffective for failing to object to allegedly improper comments by the prosecutor; and (3) the mittimus should be amended to reflect that his cannabis conviction was a Class 3 felony, not a Class 4 felony. We agreed with the third contention and affirmed the judgment as modified. *People v. Fullwiley*, 2015 IL App (2d) 130312-U, ¶¶ 2, 36.

¶ 21 In May 2016, defendant filed a *pro se* petition under the Act, claiming that the trial court erred in denying his *Franks* motion. Defendant contended that the defense witnesses' affidavits "flatly contradicted the allegations in the complaint for search warrant that [d]efendant sold drugs from the premises in question." According to defendant, the trial court "ruled that he believed that *** [d]efendant was not at the location for the last two transactions asserted in the affidavit, but believed that all four could have occurred in the first two weeks of August [2010]." Because "the [c]ourt was convinced that no transaction occurred during the last two weeks of August [2010]," the court's finding supported the conclusion that the warrant application contained false statements

of fact. Thus, the warrant and resulting arrest should have been quashed. Defendant further contended that his appellate counsel was ineffective for failing to raise the *Franks* issue.

¶ 22    The postconviction court (which we distinguish from the "trial court," which decided the *Franks* motion) summarily dismissed the petition. On appeal, the State confessed error, and we remanded for second-stage proceedings under the Act (see 725 ILCS 5/122-5 (West 2016)). *People v. Fullwiley*, No. 2-16-0822 (Sept. 7, 2018).

¶ 23    The cause eventually proceeded to the third stage of proceedings under the Act. See 725 ILCS 5/122-6 (West 2016). On April 22, 2023, the State filed a "supplemental disclosure" to the defense per Illinois Supreme Court Rule 412 (eff. Mar. 1. 2001). According to the State, it was disclosing chain-of-custody reports per its specific duty to disclose "[m]aterial or information within [its] possession or control *** tending to negate the guilt of defendant as to the offenses charged or tending to reduce his punishment." See *Brady v. Maryland*, 373 U.S. 87 (1963).

¶ 24    Each chain-of-custody report concerned evidence obtained during a "[c]ontrolled [d]rug purchase" from defendant at his 33rd Street apartment. Each report listed the date and time of the transaction and described the substance obtained during the purchase. The dates and times of the purchases were July 5, 2010, at 5:34 p.m.; August 2, 2010, at 10:07 p.m.; August 6, 2010, at 10:48 p.m.; and August 29, 2010, at 10:14 p.m.

¶ 25    On July 25, 2023, defendant, by counsel, filed a supplemental postconviction petition. Defendant claimed that the chain-of-custody reports were material because they memorialized the four alleged drug transactions described in Vaughn's affidavit. Defendant argued that the State's inadvertent failure to disclose the reports before the *Franks* hearing violated *Brady* and prejudiced defendant, as the reports supported his claim that he was not present on the dates of one or more of the alleged transactions.

¶ 26    In its answer to the supplemental petition, the State alleged as follows. While preparing for the evidentiary hearing, the prosecutor learned from the police department that there was a chain-of-custody report for each of the four controlled purchases and that the reports' dates would coincide with the dates of the purchases. The prosecutor obtained the reports on March 3, 2023, and immediately turned them over to defendant.

¶ 27    However, the State disputed that the reports negated defendant's participation in any of the controlled purchases. The State noted that defendant's assertion that he was out of Illinois for part of August 2010 came from "interested parties *** with no independent, corroborative evidence." The State further noted that McCarthy's testimony suggested that defendant was out of Illinois for only eight or nine days starting August 20, 2010. Thus, defendant could have been back at his apartment on August 29, 2010, when the fourth controlled purchase occurred.

¶ 28    The State argued alternatively that, even if defendant was away for the last two weeks of August 2010, this would falsify only Vaughn's assertion about the controlled purchase on August 29, 2010. There remained three other controlled purchases that took place on dates on which defendant did not deny that he was present. Thus, even if Vaughn's account of the final controlled purchase in August 2010 was excised from his affidavit, there would still have been probable cause to support a search warrant. Accordingly, the chain-of-custody reports did not create a reasonable probability that the result of the *Franks* hearing would have been different if the reports had been disclosed.

¶ 29    The case proceeded to an evidentiary hearing. The postconviction court admitted the chain-of-custody reports. The sole witness was defendant's counsel on his direct appeal. She testified that, after reviewing the file and consulting her supervisor, she decided not to raise the *Franks* issue on appeal. In her professional judgment, the issue was not compelling because the controlled

drug transactions that occurred during the first two weeks of August 2010 might have been sufficient for probable cause. Raising the *Franks* issue, she believed, could dilute the impact of the stronger issue of reasonable doubt.

¶ 30   The postconviction court denied defendant's petition. From the bench, the court gave the "essence" of its written ruling:

"[I]t is still a possible fact that that the transactions vaguely referenced to [*sic*] in the search warrant could have occurred all within the month as described by the affiant. I don't find that this chain of custody log makes clear in any way that there was a false statement relied upon by the judge who initially issued the search warrant. *** [A]ll four transactions could have occurred while [defendant] was within the State of Illinois.

I also find that in the event that it was shown—and it was not—*** that one of these transactions was not likely to have occurred, again, under the law, I think, the [c]ourt would have been able to excise that testimony, and in reviewing of [*sic*] the application finds that there remained probable cause for the search warrant ***."

¶ 31   In its written ruling, the postconviction court stated, in relevant part:

"9. The trial court found that the defendant failed to make a substantial showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by affiant in [the] search warrant affidavit. The court found that the four controlled purchases could have occurred outside of the vague dates [d]efendant claims to be out of the State of Illinois and still be supported by the affidavit describing transactions over the last month.

10. The newly discovered chain of custody indicates that the initial transaction actually occurred on July 11, 2010,[1] the second on August 2, 2010, the third on August 6, 2010[,] and the final transaction on August 29, 2010. Given [defendant's] evidence that he was out of state during the last two weeks of August for 8 or 9 days beginning approximately August 20, 2010, there was then and continues to be no evidence of a false statement included in the affidavit. It is entirely possible that each transaction occurred while [defendant] was within the [S]tate of Illinois and the newly discovered evidence does not alter this fact."

The postconviction court then found that defendant's counsel on direct appeal did not render ineffective assistance, as she reasonably decided to forgo raising a *Franks* issue.

¶ 32    Defendant has filed this timely appeal.

¶ 33                                II. ANALYSIS

¶ 34    On appeal, defendant contends that the postconviction court erred in finding that he did not prove his *Brady* claim by a preponderance of the evidence in that he failed to show a reasonable probability that the chain-of-custody reports, which established the dates of the four alleged drug transactions, would have changed the outcome of the *Franks* hearing. According to defendant, the reports "contain[ed] evidence that directly contradicted Officer Vaughn's sworn statements in the warrant complaint and otherwise called into question the veracity of the complaint as a whole." The State responds that (1) defendant did not prove that the information in the reports cast any doubt on the truthfulness of the information in Vaughn's application and (2) even if the information

---

[1]The trial court meant July 5, 2010.

required the excision of part of Vaughn's averments, the remaining unchallenged averments provided probable cause to search, and, thus, any violation did not prejudice defendant.

¶ 35    In a postconviction hearing, the petitioner must show, by a preponderance of the evidence, the denial of a constitutional right. *People v. Coleman*, 2013 IL 113307, ¶ 92. On appeal, we may not disturb the trial court's factual findings unless they are manifestly erroneous. *People v. Eubanks*, 2021 IL 126271, ¶ 47.

¶ 36    Under *Brady*, the prosecution is obligated to disclose any evidence in its possession that is both material and favorable to the defendant. *Brady*, 373 U.S. at 87; *People v. Beaman*, 229 Ill. 2d 56, 73 (2008). A *Brady* claim requires a showing that (1) the undisclosed evidence was favorable to the accused because it was either exculpatory or impeaching; (2) the evidence was suppressed by the prosecution either willfully or inadvertently; and (3) the accused was prejudiced because the evidence is material to guilt or punishment. *Kyles v. Whitney*, 514 U.S. 419, 433 (1995); *Beaman*, 229 Ill. 2d at 73-74. The test of materiality is whether there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Kyles*, 514 U.S. at 434; *People v. Harris*, 206 Ill. 2d 293, 311 (2002).

¶ 37    Under *Franks*,

"where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at the hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to

establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 155-56.

¶ 38    Before turning to the issues, we note a complication. In the underlying case, the trial court held a hearing ostensibly to determine whether defendant had made the preliminary showing needed to obtain a full *Franks* hearing. In substance, however, the proceeding was a full hearing on the ultimate merits of defendant's *Franks* claim. The trial court did not merely assess defendant's motion for arguable merit based on its allegations and the supporting affidavits. Instead, it received live testimony from both parties' witnesses. Practically speaking, it is difficult to imagine what more could have been presented and argued at a full *Franks* hearing.

¶ 39    Further, the trial court not only heard evidence but also made factual findings, the primary one being that defendant was not present in Illinois from August 19 through August 31, 2010. The resolution of factual disputes is inconsistent with our supreme court's characterization of a preliminary *Franks* hearing. In *People v. Chambers*, 2016 IL 117911, ¶ 79, the court held: "[R]eview of a trial court's ruling on a motion for a *Franks* hearing is subject to *de novo* review. A reviewing court is as capable as the trial court of determining whether the motion and supporting documents have made a substantial preliminary showing." Implicit in this holding is that, in determining whether to hold a full *Franks* hearing, the trial court does not hear evidence or make factual findings but, rather, decides as a matter of law whether the motion is facially sufficient. Thus, review is not deferential, as it would be where the trial court has exercised its prerogative to decide factual issues (see *id.* ¶ 68); instead, it is plenary, as, for example, where the court has decided whether to dismiss a petition under the Act (see *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998)).

¶ 40    Our analysis on appeal proceeds as if the trial court held an evidentiary hearing on the *Franks* motion, made factual findings, and denied the motion on the merits. We determine whether there was a *Brady* violation and whether it is reasonably probable that, without the violation, the trial court would have ruled differently on the *Franks* motion.

¶ 41    In contrast to the trial court, the postconviction court found that the evidence at the *Franks* hearing, even as supplemented by the chain-of-custody reports, did not prove that defendant had been absent from Illinois for any of the four transactions. The trial court had found that defendant was absent from Illinois from August 19 through August 31, 2010, which, unbeknownst to the court at the time, meant that he was absent on the date of the fourth transaction, August 29, 2010. However, the postconviction court apparently inferred from McCarthy's testimony that it was possible that defendant was present in Illinois on that date.

¶ 42    This discrepancy need not concern us, however. First, the postconviction court held that, even if the warrant application falsely stated that defendant participated in the fourth transaction, the excision of this averment would have left sufficient facts to show probable cause for the search warrant. Second, whether defendant proved that the *Brady* violation was material depended on whether there was a reasonable probability that the result of the *Franks* hearing would have been different. To assess whether that result would have been different, we consider the trial court's resolution of the factual issues raised at the *Franks* hearing. For purposes of our review, we accept the trial court's factual findings at that hearing.

¶ 43    Turning to the *Brady* elements, we note that the State concedes the second element: the reports were inadvertently withheld from defendant. Next, we agree with defendant that he satisfied the first element: the undisclosed evidence was favorable to defendant because it was either exculpatory or impeaching. The chain-of-custody reports established the dates of the four

controlled drug transactions and to some degree undermined Vaughn's affidavit. The first report stated that the first transaction between defendant and the CI occurred on July 5, 2010, which contradicted Vaughn's statement that all four transactions occurred "within the last month," *i.e.*, August 2010. More important, the fourth report stated that the final transaction occurred on August 29, 2010, which contradicted the trial court's finding that defendant was not in Illinois on that date. Thus, the reports were favorable to defendant, both on the substance of the affidavit and on Vaughn's credibility.

¶ 44    The remaining *Brady* element, materiality, is more difficult. Under that element, the question is: was the postconviction court correct that, absent any statements properly subject to excision, Vaughn's affidavit still contained sufficient information to support the search warrant? This question requires a two-stage-inquiry. First, with the addition of the chain-of-custody reports, did defendant prove that Vaughn knowingly or recklessly included false information in his affidavit? If not, there is no relief for defendant under *Franks*, so the *Brady* evidence was not material. If so, then we proceed to the second stage of the inquiry: absent the impermissible statements, was the affidavit sufficient to establish probable cause for the search?

¶ 45    We turn to the first inquiry. Arguably, there are two averments of fact that Vaughn made with knowledge of, or reckless disregard of, their falsehood: (1) the first controlled purchase between defendant and the CI took place sometime in August 2010 (and not on July 5, 2010, almost a month earlier) and (2) on August 29, 2010, two days before the date of Vaughn's affidavit, a controlled purchase between defendant and the CI occurred.

¶ 46    The first statement was arguably the result of inadvertence. Possibly, Vaughn had something to gain by postdating the first transaction to make the information appear fresh instead of stale. However, this is speculation and, in our judgment, would not satisfy defendant's burden

to prove intentionality or recklessness by a preponderance of the evidence. Moreover, even were the statements about the first transaction excised from the affidavit, the remainder of the affidavit would plainly suffice to show probable cause for the issuance of the warrant.

¶ 47    The second statement is more troubling. Accepting the trial court's finding that defendant was out of Illinois from August 20 or 21 through August 31, 2010, the report of the fourth transaction established that the application's account of the fourth transaction was false. Unlike the information about the first transaction, which merely misdated the transaction, this information falsely inculpated defendant. Had the trial court received the chain-of-custody reports, it would not have concluded that defendant might have been in Illinois when the fourth transaction took place. Instead, the court would have found that the application's allegations about that transaction were false: if the transaction occurred at all, defendant was not part of it.

¶ 48    Moreover, there is at least a reasonable probability that the trial court would have found that Vaughn's misstatements were knowing or reckless. The warrant application was signed two days after August 29, 2010. Vaughn's affidavit stated that, during the fourth transaction, he saw defendant meet with the CI at a prearranged location. As Vaughn alleged that he also saw defendant meet with the CI during the third transaction, the identification of defendant as the person who met with the CI in the subsequent transaction could hardly have been an innocent mistake. Therefore, given the trial court's findings of fact, we conclude that it is reasonably probable that, with the *Brady* evidence before it, the court would have excised from Vaughn's affidavit anything relating to the fourth transaction.

¶ 49    This appeal therefore boils down to the question: absent the tainted averments, would Vaughn's affidavit have sufficed to establish probable cause for the warrant? Here, we agree with the postconviction court that the expurgated affidavit would have sufficed.

¶ 50    "Probable cause, *i.e.*, sufficient evidence to justify the reasonable belief that the defendant has committed or is committing a crime, 'does not demand a showing that such a belief be correct or [even] more likely true than false.' " *People v. Jones*, 215 Ill. 2d 261, 277 (2005) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion)); see also *People v. Cummins*, 2025 IL App (2d) 230516, ¶ 38. We conclude that, even absent any reference to the fourth transaction, Vaughn's affidavit provided the probable cause needed for the search warrant. Thus, it is not reasonably probable that, absent the tainted averments, the result of the *Franks* hearing would have been different.

¶ 51    Defendant relied on an alibi, but he adduced *no* evidence that he was out of Illinois on the dates of any of the first three transactions. Moreover, he conceded that, while in Illinois during August 2010, he spent "periods of time" at his own residence while spending the "majority" of his time at McCarthy's residence. Even excluding the averments relating to the fourth *and* first transactions, Vaughn's affidavit established that two controlled purchases took place. Before both purchases, Vaughn searched the CI for contraband and found none. During one purchase, Vaughn observed the CI enter defendant's residence and later emerge. During the other purchase, Vaughn observed the CI interact with defendant at a prearranged location. After both transactions, the CI gave Vaughn a plastic bag containing a substance that later tested positive for the presence of cocaine. The false averments might have had some impeachment value, but we cannot say they were reasonably likely to cause the trial court to discredit everything in the affidavit about two transactions that occurred well within a month of the issuance of the search warrant. We note that defendant has not contended that the information in the affidavit would have been stale without the inclusion of the fourth transaction.

¶ 52 The findings made by the trial court are not manifestly erroneous and we agree with the legal conclusion rendered by the trial court. We conclude that the trial court properly denied defendant's petition for relief under the Act. Therefore, its judgment is affirmed.

¶ 53                                         III. CONCLUSION

¶ 54 For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 55 Affirmed.